MARY M. BOHRER, APPELLANT, v. MANSELL DAVIS ET AL., APPELLEES.*

FILED SEPTEMBER 26, 1913.   No. 17,222.

1. **Limitation of Actions: REMAINDERMAN.** The statute of limitations does not begin to run against a right of ·action until that right exists. The party who has the right of action has the full period of the statute in which to enforce it. The remainderman has no right of possession until the particular estate is terminated. He has no right of action which depends upon the right of possession until he is entitled to the possession.

* Rehearing allowed December 24, 1913.

2. **Life Estates:** CONVEYANCE OF ESTATE: FORFEITURE. The conveyance of the life estate by the life tenant conveys all of the rights of the grantor, and the grantee holds the same estate held by the life tenant. The remainderman cannot declare and enforce a forfeiture of the life estate by reason of such conveyance, and his rights are not ordinarily affected thereby.

3. ———: ———: REMAINDERMAN: ESTOPPEL. If a remainderman consents to a sale of a part of the estate, and advises the life tenant to make such sale for the purpose of payment of an incumbrance upon the whole estate, and the sale of a part of the estate is made for full value accordingly, and the proceeds applied in payment of the incumbrance, and the purchaser takes immediate possession of the land with deed of general covenants of seizin and warranty, and holds it for more than 17 years, making valuable improvements, the remainderman will not be allowed afterwards in an action in equity to repudiate such sale and recover his interest in the land as against such purchaser.

APPEAL from the district court for Greeley county: JAMES R. HANNA, JUDGE. *Affirmed as modified.*

*O. A. Abbott* and *George W. Scott,* for appellant.

*R. L. Staple, J. R. Berry* and *J. R. Swain, contra.*

SEDGWICK, J.

The plaintiff brought this action in the district court for Greeley county to quiet her title in 80 acres of land in that county. Both parties derived title from Ansel A. Davis, who died in Greeley county on the 3d day of March, 1892, intestate and leaving no children, father or mother. At the time of his death he had 160 acres of land. His widow made application to the county court under the statute known as the "Baker's Decedent Law," and the county court, pursuant to that application, caused the land to be appraised, and, it appearing to be worth but $2,000, the court entered a decree assigning the same to the widow as her homestead in fee. There was a mortgage of $1,000 upon the homestead, and some time after the decree of the county court the widow sold one 80 of this land to the plaintiff for $1,000, and in December, 1902, executed to

the plaintiff a deed of general warranty for which the plaintiff paid the sum of $1,000, and the mortgage was satisfied with the proceeds of this sale. The defendant Mary R. Davis is the wife of the defendant Mansell Davis, who is a brother of the decedent, Ansel A. Davis, and the other defendants are the children of a deceased brother of Ansel A. Davis. Anna Davis, the widow of Ansel A. Davis, died in February, 1906, and in 1910 this action was begun by this plaintiff. The trial resulted in findings and decree in favor of the defendants, and the plaintiff has appealed.

The so-called Baker's decedent act has been many times held by this court to be unconstitutional and void, and it is conceded that the order of the county court attempting to vest the fee in the widow was void. She had only a life estate by virtue of her homestead right, but the plaintiff insists that, having paid the full value of the land, and having taken a warranty deed purporting to convey the entire estate and possession thereunder, and having held the same as her own to the exclusion of all parties and with the knowledge of all these defendants for more than 17 years when this action was begun, her title has become complete. The defendants insist that the statute of limitations did not begin to run as against them until the death of the widow holding the life estate, and, as their action was begun within the ten years thereafter, it was not barred by the statute.

Counsel for plaintiff, in the oral argument and in the brief, has presented his views with clearness and force, so much so that, if the question were a new one, the writer would have been convinced that the better reason supports the plaintiff's views. When the plaintiff bought this land, the so-called Baker's decedent act was generally supposed to be valid legislation, and all parties interested in the transaction supposed that the plaintiff's grantor had perfect title and that the plaintiff took a clear and unquestionable title by her purchase. She paid full value for the land, received a deed with full covenants of seizin and warranty, took immediate, complete and notorious pos-

27

session under her deed, and has held such possession continuously until the present time. She acted in entire good faith and ought to be protected, unless the defendants have a better right in law and at least an equal equity to be protected in that right. But the law is so well settled, not only by the decisions of this court, but by substantially all other courts where the English language is used, that we have no alternative but to enforce the law as it is, and, if there can and should be a better rule, leave the legislature to supply it.

The universal rule of law is that the statute of limitations does not begin to run against a right of action until that right exists. The party who has the right of action has the full period of the statute in which to enforce it. The remainderman has no right of possession until the particular estate is terminated. He has no right of action which depends upon the right of possession until he is entitled to the possession. The plaintiff says that the statute begins to run when there is an ouster or disseizin, and that a deed by a tenant to a stranger, purporting to convey the whole estate for full value actually paid and possession thereunder, operates as ouster of the remainderman. There are many authorities so holding, but never unless the remainderman by such sale and conveyance becomes entitled to possession. In the cases so holding, it is also held that the tenant by such sale and conveyance forfeits his estate; and the remainderman may at once elect whether he will consider the particular estate forfeited. If he so elects he may recover possession, and of course under such circumstances the statute of limitations would at once begin to run against his claim. But the courts so holding also generally hold that the remainderman is not required to consider the particular estate forfeited; he may disregard the act of the tenant in making such sale and conveyance and may claim his estate when the particular estate is terminated according to its terms. The statute then will not commence to run until his right of possession accrues at the termination of the life estate.

The sale and conveyance by the tenant is not an ouster or disseizin, unless the remainderman elects to so consider it. The general rule is that a conveyance of the life estate conveys all the rights of the grantor. The grantee holds the estate during the life of the grantor; the remainderman cannot forfeit the life estate, and is not entitled to possession until that estate terminates, and is not ordinarily affected by the conveyance. This is undoubtedly the rule in this state. *Helming v. Forrester,* 87 Neb. 438; *McFarland v. Flack,* 87 Neb. 452.

The general question is pretty fully discussed in a note to *Allen v. De Groodt,* 14 Am. St. Rep. 626 (98 Mo. 159). The editor says in the note: "When, upon the termination of a life or other estate which entitled its owner to the possession of the property, the reversioner or remainderman becomes vested with an estate giving him a right to such possession, he will naturally meet with reluctance upon the part of the persons in possession to yield it to him. If possible, they will interpose a claim that his estate has been extinguished by prescription, or by his laches, or by any other mode which their ingenuity or that of their counsel can suggest. It is a general rule, well supported both by reason and authority, that no one can be in default in not bringing an action which it was impossible for him to have maintained if brought, and that no statute of limitations can commence running until the period arrives when the person claiming title or right of possession can successfully vindicate his claim and right by some appropriate action. When, therefore, one who has been a reversioner or remainderman becomes entitled to the possession of the property by the termination of a preceding estate in possession, and he brings his action to enforce his right, and is met with a plea of prescription or laches, the proper inquiry is, whether the action which he thus brings could have been commenced and maintained by him at any period anterior to its actual commencement; and, if so, the statute must be regarded as operating from and after such period. If, after that period, the full time

Bohrer v. Davis.

required by the statute of limitations has interposed, he should be regarded as barred. Otherwise, his right must be regarded as still intact and irresistible, however long continued the delay has been. To this rule there appears to be an exception, arising in the cases in which the tenant in possession has been guilty of some act or default for which the reversioner or remainderman might have elected to terminate the estate in possession. In such cases, while the reversioner may so elect, and, upon such election, maintain an appropriate action to recover possession, he may also waive the forfeiture; and, if he does waive it, he is regarded as obtaining a new right of possession upon the death of the life tenant, or other termination of the particular estate; and the statute of limitations will not be allowed to commence its operation until the happening of the latter event (citing cases). * * *. The possession of the tenant for life is never deemed adverse to the reversioner or remainderman (citing cases). The protection of the latter is not limited to a mere presumption that the possession is not adverse to him; it cannot by any possibility become adverse, for the reason that such possession is not an interference with his rights. The tenant cannot make his possession adverse, though he denies that any one has any estate in reversion or remainder, and proclaims that he is the owner of the fee. 'There is no one to sue, no matter how often or how openly and loudly such tenant may claim to be an absolute proprietor, for the person in reversion or remainder concedes the right of possession for life, and cannot therefore dispute it.' *Salmons' Adm'rs v. Davis*, 29 Mo. 176. Hence it follows that the statute of limitations does not run against any possessory action in favor of a reversioner or remainderman until the extinguishment of the estate of the tenant for life. * * * The fact that the reversioner did not pursue his remedy to remove a cloud from his title appears to us to be immaterial. It has always been the law that any one might resort to a court of equity to remove an apparent cloud upon his title, and statutes are now in

force in many of the states under the provisions of which one may call upon any one asserting an adverse claim to his property to litigate such claim, and to submit it to judicial determination. If persons holding estates in remainder or reversion, and therefore not entitled to the immediate possession of the property, must exercise the right thus conceded to them in equity or by these statutes, or be met with a presumption that every conflicting claim accompanied by the possession is valid, these rights of action operate as so many snares. These equitable remedies, by which one claiming an estate or interest in land may appeal to the courts to determine it, were designed for his protection, rather than his destruction, and the fact that he does not resort to them ought not to be regarded as an irrevocable abandonment of those remedies to which he is otherwise entitled." We quote thus liberally from this note because the author here states the law as it now exists in this state and the reason for its existence. If the reasons given are insufficient and the law should be changed, the courts cannot change it without the help of the legislature.

Tenants in common have an equal right of possession, and if one of them conveys the whole estate for full value to a third party, who excludes the other tenant in common, the statute of limitations will run from the time of such exclusion. *Beall v. McMenemy,* 63 Neb. 70. The reason is because the right exists at the time of the exclusion. No new or additional right accrues to the tenant so excluded. His right of action is as complete as it ever can be. The plaintiff cites, as supporting her theory, *Lewis v. Barnhardt,* 43 Fed. 854; *Crawford v. Meis,* 123 Ia. 610. There is language in the opinion in each of these cases which appears to support the plaintiff's contention. In *Lewis v. Barnhardt* the estate was sold for taxes and the defendant claimed under that title. It was held that the purchaser at the tax sale was a purchaser in good faith, "without notice that his vendor owned an estate for life," and that in such case the statute of limitations began to run from the time of the purchase. The decision is put

upon that ground. The case is a peculiar one, and whether it may be considered as authority in general it is not applicable to the question here presented. *Crawford v. Meis* also involves the question of a tax title and the power of one cotenant to disseize the other. The court, after saying that "as a general rule the limitation statute does not begin to run as against a remainderman until the termination of the preceding estate," said that that rule involves the continuation of the relation of tenant and remainderman. The court then states the law as this plaintiff contends it is, but the decision of the case does not appear to be necessarily based upon this statement of the law. The court appears to consider that this view of the law is necessarily derived from its former holding in *Murray v. Quigley*, 119 Ia. 6, but that case involved a question of ouster between cotenants, and was principally determined upon the fact that the plaintiff's title was derived directly from the state, and the essential defense was that the conveyance was obtained by fraud. The language used in the latter case was apparently not justified by the former decision. Both of the cases, however, were decided after the note from which we have quoted so liberally was written, in which it was said: "The rule that the possession of a tenant for life is not adverse to the remainderman or reversioner has never been repudiated in express terms." The title of these defendants was not barred by the statute of limitations, and the district court was right in so holding.

The defendant Mansell Davis, as one of the two surviving brothers of the decedent, Ansel A. Davis, inherited a one-half interest in the estate in remainder, and has since purchasd a one-twelfth interest from one of the heirs of his deceased brother, Orsel. The outstanding mortgage of $1,000 covered not only the 80 acres of land involved in this litigation, but included also land which has now descended to Mansell Davis. It was in his interest to have this mortgage paid. He was consulted in regard to selling a part of the land in order to relieve the remainder from

Bohrer v. Davis.

incumbrance, and consented to so doing. The proceeds of the 80 sold were used to relieve the remaining 80 from incumbrance. He participated in the transaction, which was for his benefit in the same sense in which it was for the benefit of the owner of the life estate, and has thus himself received the full value of all interest that he had in the land sold, and it seems clear that he cannot now in a court of equity repudiate the transaction and recover an interest in the land disposed of, while retaining the full value received therefor. The evidence does not show that the other defendants took any part in these transactions.

The decree of the district court, therefore, is right as to the children and heirs of Orsel Davis, deceased. The decree is modified so as to quiet the plaintiff's title in seven-twelfths interest in the land, and in other respects is affirmed, and the cause is remanded, with instructions to partition the land between the plaintiff and the children of Orsel Davis, deceased. The costs in this court will be equally divided between the plaintiff and the defendant Mansell Davis.

AFFIRMED AS MODIFIED.

LETTON, J., not sitting.

FAWCETT, J., dissenting.

The majority opinion is an excellent one down to the last paragraph, and as to the first and second paragraphs of the syllabus. The closing paragraph of the opinion and the third paragraph of the syllabus are, in my judgment, all wrong. Referring to defendant Mansell Davis, the opinion states: "The outstanding mortgage of $1,000 covered not only the 80 acres of land involved in this litigation, but included also land which has now descended to Mansell Davis. It was in his interest to have this mortgage paid. He was consulted in regard to selling a part of the land in order to relieve the remainder from incumbrance, and consented to so doing. The proceeds of the 80 sold were used to relieve the remaining 80 from incum-

brance. He participated in the transaction, which was for his benefit in the same sense in which it was for the benefit of the owner of the life estate, and has thus himself received the full value of all interest that he had in the land sold, and it seems clear that he cannot now in a court of equity repudiate the transaction and recover an interest in the land disposed of, while retaining the full value received therefor." This is an incorrect and very misleading statement of the record. He did not "participate in the transaction," nor was he "consulted" in regard to selling a part of the land "in order to relieve the remainder from incumbrance," nor did he "consent to so doing." His language will have to be greatly enlarged upon in order to give it any such meaning. I will now give the entire testimony upon that point. Before doing so, however, let me call attention to one legal principle and to one question of undisputed fact. The legal principle is: Estoppel is an intentional relinquishment of a known right. The undisputed fact is: That at the time Mansell Davis was "consulted," in reference to the sale of the 80, and "consented" thereto, everybody supposed that the whole quarter section was the absolute property of the widow Davis. It had been set off to her under the Baker's decedent act, which at that time had not been held invalid. The widow, who was making the sale, Mrs. Bohrer, who was making the purchase, her husband, Mr. Bohrer, Mansell Davis, the county judge and the lawyer in the case, all thought that the property belonged absolutely to her and that she had the full right to sell it, so that everything that Mansell said in relation to the matter was with that understanding as to the situation and ownership of the property. Now, let us see what the testimony is upon that point. I give it entire as shown by the abstract prepared by appellant.

Mrs. Bohrer, the plaintiff, gave no testimony on the subject. It is evident, therefore, that she had no conversation whatever with Mansell Davis. Her husband testified as follows: Direct examination: "Had a talk with Man-

sell Davis about buying a part of it. Well, I met him in
the road, and I told him I had been talking to Tom (that
was her son) and old Annie herself (we always called her
old Annie) about buying that piece of land, 'Well,' he
says, 'if you buy it, it would help her out on that mort-
gage on that 80.'" Cross-examination: "Yes, sir; that
talk with Mansell Davis was in November before the deed
was made, along between his place and the land, in the
road, stopped and talked about it. No one present just
me and him. He was horseback. If I recollect I was
afoot. Oh, we got to talking there like neighbors will, and
then I told him I had been talking with Tom and Annie
about that piece of land, and that's the way it commenced.
Well, he was willing (this, of course, is a conclusion),
said it would help her out, leave her a home if she got
the mortgage off, and so on." The papers show how much
the mortgage was. Redirect examination: "There was
something said in my talk with Mansell Davis about how
the rest of this mortgage would be taken care of. Why
the mortgage would be released on the east 80 and put on
the west 80, and that would leave her a home. That was
the general understanding with us, all the way through."
It will be observed that this redirect is a mere conclusion
of the witness as to what was said. Recross-examination:
"Q. When did Mansell make that statement to you? A.
Why, as a friend, we was a-talking there. Then there
was another time we were talking about that, that has
come to my mind, Mansell Davis came down to my place
one Sunday morning, and we talked the matter over again
there west of the house. That was just before the deed
was made. No one present, just him and me by ourselves.
No; nothing said about the mortgage at that time that I
recollect of; oh, yes; the mortgage was talked about at the
first conversation. There were several talks around
amongst us, I can't just remember. Talks with Mrs. Davis
and Tom and Mr. Davis told me about the $1,500 mort-
gage. Mrs. Davis, Tom and Mansell. Yes, sir; Mansell
just said this, if I would take it she could turn the money

over to the Lombard Loan Company, the one that held the mortgage against it, and could put the mortgage on the other 80, west 80, and that would release the east 80. No; it was Mansell, not Mrs. Davis, that said that. He knew the Lombard Company had the mortgage all right." This is the sum total of the testimony offered by plaintiff upon that point. Without any contradiction or qualification on the part of defendant Mansell Davis, I insist that it is entirely insufficient to sustain a judgment of estoppel as against Mansell. He did not know that he had any right in the property. The talk between him and Bohrer was, as twice stated by Bohrer, a mere friendly talk. There was absolutely nothing said about Mansell's having any interest. It was simply a friendly talk as to whether or not it would be a good thing for the Bohrers to buy the 80, and Mansell, as a friend, simply stated that if they did buy the 80 "it would help her out" on the mortgage.

Mansell Davis testified, upon direct examination: "I heard part of Mr. Bohrer's testimony, not sure I heard it all. I don't think I had as much conversation as he said. I remember his asking me something about the advisability of his buying that place. I can't just recall now nearly so much as he said here. I remember his asking me if I thought he ought to buy, or if it would be safe for him to buy it. Well, I may have suggested that it would be safe enough for him to buy it so far as I knew. I didn't advise him to buy it, as he said. I am very sure we never had any such conversation on Sunday at his place." Plaintiff's counsel did not see fit to cross-examine Mansell. The above is the entire testimony upon this point.

The decree of the district court found that the defendants were entitled to the possession of the premises at the death of Mrs. Davis and to the rents and profits since that time; that plaintiff's possession since the death of the life tenant had been wrongful; found the value of the improvements made by plaintiff to be $125 (plaintiff testified that no buildings had ever been erected on the property); found the sums paid for taxes for the year 1892 and taxes

Bohrer v. Davis.

since the death of the life tenant; found that plaintiff had paid the $1,000 mortgage, and that such payment was beneficial to the defendants; found the annual rental of the property since the death of the life tenant to be $100; stated the account between the parties as to rents, payment of taxes, and payment of mortgage, and found a balance due the plaintiff for $1,047.47; that plaintiff was entitled to a lien for the same; ordered defendants to pay the same within 60 days, and that in case of a default the premises be sold to satisfy the amount so found due, with interest, costs and increased costs. This judgment is not only right in every respect, but is the only judgment which, under the former decisions of this court and the other authorities cited in the majority opinion, could, properly, be rendered upon the record before us. The district court evidently had those cases before it, together with *Hobson v. Huxtable,* 79 Neb. 340. The rules announced in those cases were followed, and the judgment should not be disturbed.

Briefly stated, plaintiff purchased the life estate of the widow Davis and has enjoyed that life estate for 17 years. In order to have that enjoyment, she paid off a mortgage of $1,000. The decree of the district court now gives that back to her, credits her for taxes paid since the death of the life tenant, credits her with her improvements, and only charges her with rent since the life tenant's decease. If she is not obtaining full equity under the decree of the district court, then I confess that I have no conception of. equity. The holding of the majority opinion amounts to absolutely taking away from a remainderman his estate, under the guise of estoppel, when no estoppel has been shown.

As an abstract proposition of law the third paragraph of the syllabus may be sound; but the trouble is, it has no application to the facts in this case. Mansell Davis is not invoking the aid of a court of equity to repudiate a sale by the life tenant which he had advised. He is here standing upon his legal rights, in a suit in equity com-

menced by the grantee of the life tenant, which seeks to enlarge his purchase of his grantor's life estate into a purchase of the fee of the entire estate. In such a case the rule announced in paragraphs 1 and 2 of the syllabus applies. Mansell is not refusing to do equity. On the contrary, the decree of the district court requires him to do that which is equitable. Very few persons who buy a mere life estate have the good fortune to enjoy that estate for 17 years. The district court allowed plaintiff everything that she is entitled to, and its judgment should be affirmed generally.

HAMER, J., joins in above dissenting opinion.