MARY M. BOHRER, APPELLANT, V. MANSELL DAVIS ET AL., APPELLEES.

FILED JULY 11, 1914. No. 17,222.

Rehearing of case reported in 94 Neb. 367. *Former judgment adhered to.*

PER CURIAM.

On rehearing, our judgment (94 Neb. 367) is adhered to. ·

HAMER, J., dissenting.

I regret that I feel obliged to dissent from the majority opinion which, adhered to by the court's present action, becomes *Bohrer v. Davis,* 94 Neb. 367. Mary M. Bohrer brought an action in the district court for Greeley county against Mansell Davis and other defendants. There was a decree for the defendants, and the plaintiff appeals. The defendant Mansell Davis was the brother of decedent, Ansel A. Davis, who was also called Abner Davis. Anna Davis was the widow of Ansel A. Davis. Other defendants are the children of the brother of Ansel A. Davis. This brother is deceased. His name was Orsell Davis. Mary R. Davis is the wife of the defendant, Mansell Davis. When Ansel A. Davis died, March 3, 1892, he owned 160 acres of land. He had no children, no father, and no

Bohrer v. Davis.

mother, and died intestate.   There was a mortgage of
$1,000 on the land.   The widow of Ansel A. Davis, Anna
Davis, made application to the county court under the
statute known as the "Baker decedent law."   The county
court caused the land to be appraised under the applica-
tion, and it was found to be worth $2,000, and was as-
signed to the widow as her homestead *in fee*.   The purpose
of this proceeding was doubtless to give her *title to the
land in fee*.   She was the widow of Ansel A. Davis when
she died in February, 1906.   This action was commenced
by the plaintiff in 1910.   The purpose of this action is to
quiet the title in Mary M. Bohrer to 80 acres of the origi-
nal 160.   The widow understood at the time, and probably
everybody else did, that she had a *good title to the whole
quarter section*.   To pay off the mortgage she sold the
80 acres in controversy to the plaintiff for $1,000, and exe-
cuted and delivered to her a warranty deed for the 80-acre
tract that she bought.   Anna Davis executed and deliv-
ered the warranty deed to the plaintiff in December, 1902.
When the plaintiff received this deed she received it with
notice of the fact that the said Anna Davis was the right-
ful occupant of the premises and was then claiming to own
the same.   Anna Davis had been in possession of the prem-
ises with her rights undisputed for the period of about 10
years.   The action was not brought by the plaintiff until
in 1910.   *A period of 17 or 18 years elapsed during which
the title to the widow, Anna Davis, and her grantee was
unassailed, as also their right of possession.*

It may be admitted that the plaintiff's grantor had a
life estate in the premises.   She had it under the law and
without effort, but the fact need not have prevented her
from taking possession and holding possession under any
*other* meritorious claim of right, if she had it.   And with-
out any *claim of right* she might have taken possession.   If
she was the possessor of different claims, she had a right
to prefer the one she liked best, and to risk her case on
that one.   She also had a right to present all her claims
and to get out of them their full value.   She also was
permitted to assert her alleged right to the title and own-

ership without any actual right to assert. She was free to be wrong. Acquiring title by adverse possession contemplates that such possession continuously asserted and maintained without interruption for the period of 10 years from the time it begins will be deemed rightful, however wrongful and unfounded it may have actually been at the commencement. Then, what was there to prevent her from saying: "(1) I rely upon 'Baker's decedent law" and the proceeding under it; (2) I rely upon the fact that no one attempted to disturb me for 10 years from the time I began to claim possession; (3) the statute began to run as against the remaindermen (a) as soon as I began to claim the right of possession by whatever authority I claimed it, or without any authority, (b) and the remaindermen were bound to assert and establish their rights to a judgment of the court, and within ten years from the time such action could have been lawfully commenced by them to protect their interest as remaindermen."

When the plaintiff began her action to quiet title, she and her grantor had been in the undisturbed possession of the premises for 17 or 18 years. Was there anything which compelled the plaintiff to take notice that the defendants had rights in these premises which she was bound to recognize? Did the widow have any less rights with which to maintain her possession because of the *one undisputed* right which she had—that of a life estate?

One may be estopped when he acts in the light of the actual facts. The first principle of estoppel is that the person estopped shall understand the relation of his conduct touching the matter concerning which he is estopped. Estoppel cannot possibly apply to the plaintiff in this case, because at the time the 80-acre tract was sold to pay the mortgage of $1,000 everybody supposed that the land belonged to the widow, and all parties *acted under the Baker decedent law.* The widow was in possession of the land under a judgment of the county court. It is immaterial that the Baker decedent law was unconstitutional and void. The widow was rightfully entitled under the law to a life estate in the property. But she *was not compelled*

*to rely upon that alone.*  If without any right of that kind she had remained in the undisturbed possession of the land for 10 years asserting her *title to the fee,* that would have been sufficient.  She and her grantee held possession for 17 or 18 years, and she was *all the time* claiming to own the fee.

John K. Bohrer, the husband of plaintiff, testified that he knew Mansell Davis; that he knew the Ansel Davis homestead.  "Well, I met him in the road, and I told him I had been talking to Tom, that was her son, and old Annie herself, we always called her old Annie, talking about buying that land, 'Well,' he says, *'if you buy it it would help her out on that mortgage.'*  That's why they wanted to sell it for to redeem and release that mortgage on that eighty.  Q.  You may state, Mr. Bohrer, what was the first thing you did with this land after this deed was procured; what was the first work you did on the land?  A.  Repaired up what little fence there was there and put some new fence on.  Q.  About when was that?  A.  That was in the spring of 1893."

Mansell Davis advised the purchase of the land by Mrs. Bohrer, because "it would help her out on that mortgage," meaning thereby that it would enable Anna Davis to pay off the mortgage.  He knew that the purchase was being made.  He knew that Anna Davis was selling that land *herself,* and as her own land, so that she would have the *remainder of the tract free* from debt.  He knew that the fence was built, the well dug, the windmill put up, and other improvements made, such as one does *not* make on land where his possession is only temporary.  Mrs. Bohrer put her deed on record.  *It was notice to the Davis brothers that she owned the land that Mrs. Anna Davis had sold to her.*

The deed made by Anna Davis to Mary M. Bohrer recites that Anna Davis is a widow.  The deed is dated December 26, 1892.  It was acknowledged on the same day. The mortgages to the Lombard Investment Company were two.  One of them was for $125.02, and the other for

$1,000. The money was used toward the payment of these mortgages.

In *Hobson v. Huxtable,* 79 Neb. 340, it is said in paragraphs three and four of the syllabus: "(3) The heirs aforesaid may, during the life estate, maintain an action under sections 57-59, ch. 73, Comp. St. 1905, for the purpose of quieting their title or removing a cloud therefrom." "(4) If a remainderman, not being under any legal disability, fails for 10 years *after his cause of action accrues* to commence his suit, he is barred by the statute of limitations from maintaining his action to quiet title, and the fact that a remainderman owning an undivided interest in real estate may be under a legal disability will not toll the statute as to the *other* remaindermen not within the exception." It is said in the body of the opinion: "It is asserted that an action to quiet title cannot be maintained by the heirs during the lifetime of the surviving spouse. Our statutes plainly give the right. Comp. St. 1905, ch. 73, secs. 57-59. Section 59 is surplusage unless it extends that right to the remainderman: 'Any person or persons having an interest in remainders or reversion in real estate shall be entitled to all the rights and benefits of this act.'" This court held the action could be maintained before the surviving spouse departs this life. *Holmes v. Mason,* 80 Neb. 448. It also held in said case that the statute of limitations *bars* that right unless exercised within 10 years of the time the cause of action *accrues*; the heirs being adults. If the defendants were adults at the time the plaintiff's grantor set up her claim to the homestead, they had the right to commence an action for the protection of their interests. While it might be true that they could bring no action for the *possession* of the property while the plaintiff's grantor owned a life estate therein by reason of her survivorship, yet there is a distinction made between the two kinds of actions, the one for *possession* and the other to *quiet title. The latter they could bring.* The remainderman has a right which he may protect as soon as it exists. It is enough that *he is a remainderman.* The grantor and the plaintiff to-

gether occupied the land 17 or 18 years under the claim that they *held the legal title*. It was for the remainder-men to defend themselves against *this claim of legal title*. If they failed to do so for more than 10 years after their rights *accrued,* then *they are barred*. This doctrine is ig-nored by the majority opinion.

If the plaintiff's grantor, Anna Davis, asserted that she was the owner of the property and claimed the property as *her own* by title ever *so inadequate,* the statute of limi-tations began to run *at that time*. It should not be forgot-ten that she *did have possession and that she was claiming a title in fee*. Mansell Davis was not estopped because of his conversation with the plaintiff's husband, because what he did was done *without knowledge touching the subject*. Mansell Davis thought the widow owned the land. The brothers of Ansel A. Davis were possible heirs of Ansel A. Davis. When Anna Davis asserted title to the property, *claimed to own the fee,* then they were bound to protect their inheritance or to lose it by reason of the asserted rights of the widow and the statute of limitations. Al-though she actually got no legal title by the proceedings under the "Baker decedent law," *yet she claimed the legal title by that act and she published it to the world*. She also made a long struggle to redeem the land from tax liens. She did it as owner of the fee. She also sold half of the land and conveyed it by warranty deed to the pur-chaser, Mrs. Bohrer. She did this as the owner of the fee, and Mrs. Bohrer was put in possession. Anna Davis also paid off the mortgage and put it on record as evidence of the fact that *her title was cleared up*. After she paid off the mortgage she went right along living on the remaining 80 acres, *improving it and asserting her ownership over it*. The Davis brothers *stood by and saw her make this* strug-gle. She spent her money and her time in this litigation, and these brothers *let her proceed*. Mansell Davis talked it over with plaintiff's husband as a good thing to do *on the widow's* account.

The brothers, Mansell Davis and Orsell Davis, were adults, and the statute began to run as to them when:

ever Ansel A. Davis died. They had the right immediately to protect their ownership by commencing an action to quiet title.

It is my contention that, Anna Davis being shown by the evidence to have claimed the ownership in fee of the land, and to have taken possession immediately after her husband's death and to have continued in such possession along with her grantee under such claim of ownership for a period exceeding 10 years, the statute of limitations must run in her favor and in favor of her grantee, Mrs. Bohrer, and against all the heirs who are adults. And, where she claimed the right of possession and ownership as against all the world, it was not for another to put into her mouth, against her will, a claim for a less interest in the land than that which she alleged.

In *Hall v. Hooper,* 47 Neb. 111, there were remainder-men to follow after a life estate, the tenant of which was not a party to the suit. There was a void foreclosure. The purchaser entered into actual possession under the sale taken in the foreclosure case. The foreclosure was void. "The proof showed that the proceedings were void as to the life tenant as well as to the plaintiffs. *Held,* That the mortgagee's possession was *adverse to the plaintiffs,* and *not merely for the life estate."* In the body of the opinion it is said: "The statute does begin to run after the debt matures from the time the mortgagee enters into open, notorious, and actual possession under claim of ownership. * *. * *Anonymous,* 3 Atk. (Eng.) 313; *Dexter v. Arnold,* 1 Sumn. (U. S.) 109; *Knowlton v. Walker,* 13 Wis. 295 (*264); *Montgomery v. Chadwick,* 7 Ia. 114. The action was therefore barred whether the four or the ten-year statute applies, and the defendant pleaded the bar. * * * We have already held that under our law this action may be maintained by a *remainderman during the term of a tenant for life.* * * * Everything shows that Hooper's possession has been under a claim derived from the foreclosure, and not as life tenant. * * * The plaintiffs are not entitled to relief against it (the mortgage) as against the mortgagee, in pos-

session *under a void foreclosure sale, without offering to redeem.* They have not so offered, and, their right to redeem being barred by the statute of limitations, we cannot now permit an amendment for that purpose." *The effect was to hold that the statute of limitations applied.* Applying the rule laid down in that case to the instant case, the defendants are beaten by the adverse possession of Anna Davis and her assertion of ownership, coupled with that of her grantee, Mrs. Bohrer.

In *Holmes v. Mason, supra,* the plaintiff commenced an action to quiet the title. There was an answer by Nancy E. Mason claiming a life estate in the land and possession during the remainder of her natural life. The other defendants filed cross-petitions alleging ownership in fee subject to the life estate of their codefendant, and prayed for a decree quieting their title. The result was a judgment by which the plaintiff was given the life estate of the first-named defendant; the other defendants were adjudged to be the owners of the fee; their title was quieted, and they were awarded possession *after the extinguishment of the life estate.* The plaintiff appealed. William B. Mason died intestate in Harlan county on the 20th day of October, 1881. After his death his widow was appointed administratrix of his estate, and in September, 1882, she applied to the district court for a license to sell all the real estate for the payment of the debts of the intestate. A license was granted, and she sold it. Deeds were made to the purchaser. When the action was commenced from which the appeal was prosecuted, three of the defendants, Ida E. Rowley, Henry L. Mason and Effie I. Harroun, were *more* than 10 years past their majority, while the other defendants, when their cross-petitions were filed, were a little less than 10 years past that age. The plaintiff's first contention was that the bar of the statute was complete as to these defendants who were more than 10 years past their majority when the action was commenced. The trial court held that the plaintiff was the owner of the life estate of the defendant Nancy E.

96 Neb. 31

Mason.  This court held that, as no complaint had been
made as to the correctness of that part of the decree, it
followed that as against him a possessory action could
not be maintained; that the "defendants were compelled
to proceed, if at all, under the provisions of section 59 to
have their remainder established and their title thereto
quieted."  This court held: "The statute of limitations
as to each of the several defendants commenced to run
when he arrived at his majority.  So as to the defendants
who were more than 10 years past their majority at the
time this action was commenced, the bar of the statute
of limitations was complete.  Therefore, so much of the
decree of the trial court as granted any relief to those de-
fendants was erroneous.  As to them the action should
have been dismissed, and the title to three-fifths of the
land in controversy should have been quieted in the plain-
tiff"—citing *Foree v. Stubbs,* 41 Neb. 271; *Hall v. Hooper,*
47 Neb. 111; *First Nat. Bank v. Pilger,* 78 Neb. 168;
*Lyons v. Carr,* 77 Neb. 883; *Hobson v. Huxtable,* 79 Neb.
334.  *Because of the statute of limitations this court then
reversed so much of the judgment of the district court as
granted any relief to the defendants who were 10 years
past their majority.*  In this kind of a case a claim of
right of Mrs. Davis must be based upon her conception of
its magnitude, and not upon the actual fact, and she can-
not be restricted by the court and by her adversary to a
*less claim* than that of *ownership* if she is in *possession
under a claim of ownership* and asserts her exclusive right
to the fee title.  And whatever right she obtained by rea-
son of her assertion of title was conveyed to her grantee
when she made and delivered the deed.

In the former opinion in this case (94 Neb. 367), it is
said to be "a general rule, well supported both by rea-
son and authority, that no one can be in default in not
bringing an action which it was impossible for him to
have maintained if brought, and that no statute of limi-
tations can commence running until the period arrives
when the person claiming title or right of possession can
successfully vindicate his claim and right by some appro-

priate action." *The opinion leaves out of the case a dis-cussion of the duty of the remainderman in relation to the application of the statute of limitations.*

If the heirs neglect to assert their rights within 10 years after attaining their majority, then the court may not hear them. If the doctrine in *Holmes v. Mason, supra,* is to be applied to the instant case, then the plaintiff should have judgment quieting the title to the land claimed by her, except as to such heirs as had not attained their majority at the expiration of 10 years from the time the adverse possession of Anna Davis began, commencing with her assertion of ownership of the fee title and possession of the premises.

As I understand it, the syllabus adopted in the original case (*Bohrer v. Davis,* 94 Neb. 367), and consisting of three paragraphs, avoids in the first paragraph the statement of any legal principle presented for the consideration of this court or in any way before it, while the second paragraph attempts to decide something not before the court, and the third paragraph asserts an erroneous and unjustifiable conclusion against Mansell Davis and estops him because he talked in the dark about a subject of which he knew nothing. The criticism seems to be invited by an inspection of the paragraphs, the last of which announces estoppel of one who spoke supposing he knew the facts when he was ignorant of them, the second of which announces that a remainderman cannot enforce a forfeiture of a life estate where the life tenant has conveyed her rights to the grantee, a matter not sought to be questioned, and the first of which alleges that the remainderman has no right of possession until the particular estate is terminated, and no right of action depending upon the right of possession until entitled to possession, when the real question was whether the remainderman was obliged to protect his title by an action against one in adverse possession under a claim of absolute ownership of the title in fee in order to prevent the running of the statute of limitations, so as to be a bar to his rights as a remainderman.