IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 27, 2005 Session

**KATHY BROWN, ET AL. v. CLINT SEAL, ET AL.**

**Appeal from the Chancery Court for Hancock County**
**No. 01-8531     Thomas R. Frierson, II, Chancellor**

---

**No. E2004-01499-COA-R3-CV     Filed April 21, 2005**

---

In the 1940's, Tyler Seal received a life estate interest in a parcel of land with the remainder going
to his heirs at law upon his death.  In 1968, Tyler Seal conveyed his interest in the property to his
brother, Clint Seal, via a deed which purported to convey a fee simple interest.  This deed was not
recorded until 1991.  Tyler Seal passed away in March of 1996.  Clint Seal deeded the property in
fee simple to his son and daughter-in-law, Tony and Patricia Seal, the following year.  This lawsuit
was filed by various persons claiming an interest in the land because they were remaindermen.  Suit
was brought against Clint Seal as well as Tony and Patricia Seal ("Defendants").  Defendants
claimed they were the rightful record owners of the property or, alternatively, that they were entitled
to ownership of the property based on adverse possession.  The Trial Court concluded Defendants
were entitled to ownership of the property because they had adversely possessed the property for the
requisite number of years and further that Plaintiffs' seven year statute of limitations to file suit had
expired.  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Reversed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and
SHARON G. LEE, JJ., joined.

Douglas T. Jenkins, Rogersville, Tennessee, for the Appellants Kathy Brown, Deanna Trent, Rodney
Seal, Norman Seal, Tener Clemons, Louise Welch, and Dennis Davis.

Floyd W. Rhea, Sneedville, Tennessee, for the Appellees Clint Seal, Tony H. Seal, and Patricia G.
Seal.

# OPINION

## Background

This lawsuit involves a dispute over ownership of a parcel of land located in Hancock County, Tennessee. A chronology of the mostly undisputed facts shows that on March 15, 1941, the last will and testament of Penn Seal was admitted to probate. The will conveyed to Tyler Seal a life estate interest in a particular tract of land with the following language:

> Ninethly (sic), I give and bequeath [the land] to my son Tyler Seal for
> his life, and then to his heirs if he has any, if no heirs at his death then
> to my heirs to share equally and alike….

Hop Seal was Penn Seal's brother. On March 11, 1946, Hop Seal deeded an interest in another tract of land to Tyler Seal. The deed was recorded in the Register's Office for Hancock County on March 12, 1946. The deed describes the land and then makes the following handwritten provision, which we quote:

> Accorde to the will that Penn Seal and Mima Seal mad to Tyler C
> Seal that the Said Mrs Penn Seals is to hav her Suport from the Land
> willed to Tyler C Seal it is further agred that Said Tyler Seal has no
> hears this property Goes to the other hears at his Deth

It is the land obtained in the 1946 deed which is the subject of this lawsuit. With regard to this property, on November 12, 1968, Tyler Seal conveyed his interest in this property to his brother, Clint Seal, via a deed which purported to convey a fee simple interest. The 1968 deed from Tyler Seal to Clint Seal was not recorded in the Register's Office for Hancock County until August 1, 1991.

Tyler Seal passed away on March 4, 1996. Tyler Seal had no spouse and no children.

In 1997, Clint Seal conveyed the property to his son and daughter-in-law, Tony and Patricia Seal. The deed purported to convey a fee simple interest and was duly recorded in the Register's Office for Hancock County in 1999.

Kathy Brown, Deanna Trent, Rodney Seal, Norman Seal ("Plaintiffs") and others are some of Penn Seals' heirs. In May of 2001, Plaintiffs filed this lawsuit claiming an interest in the subject property. Specifically, Plaintiffs claimed that Tyler Seal had only a life estate interest in the property and when he died without a spouse or any children, the property reverted to the heirs of Penn Seal, i.e., Plaintiffs. Plaintiffs sued Clint Seal as well as Tony and Patricia Seal.

Defendants filed an answer and denied that Tyler Seal had only a life estate interest in the subject property. Defendants claimed that Tony and Patricia Seal were the rightful record owners of the property. Defendants further claimed that even if they had not properly obtained ownership of the land through the deed from Tyler Seal to Clint Seal, they had nevertheless adversely possessed the property for the requisite number of years and, therefore, were entitled to retain ownership.

Plaintiffs filed a motion for summary judgment which was partially granted by the Trial Court in December of 2003. After reviewing the pertinent facts, which were undisputed, the Trial Court held:

> In light of the circumstances surrounding both the last will and testament of Penn Seal and the warranty deed from Mr. and Mrs. Hop Seal to Tyler Seal in 1946, this Court determines that the intentions of the respective testator and grantors were to convey to Mr. Tyler Seal a life estate interest in the real property, with contingent remainder to his lineal descendants. However, as the will and deed of conveyance did not include terms such as "heirs of the body", "bodily heirs" or "bodily issue", the term "heirs" which was included, demands a different result. By virtue of the language contained in both the last will and testament of Mr. Penn Seal and the deed of conveyance from Mr. and Mrs. Hop Seal, Mr. Tyler Seal was vested with a life estate interest in the real property and upon his death, his heirs at law as defined by the rules of intestate succession in Tennessee comprised the class of remaindermen....

One of the issues the Trial Court reserved for later determination was whether Defendants could claim entitlement to the property through adverse possession. The Trial Court then conducted a hearing on this issue and although the record contains no transcript from this hearing, a Statement of Evidence has been provided.

Tony Seal testified at the hearing that he and/or his father, Clint Seal, have farmed the property at issue since 1984. Tony and his father fenced in the property and used the barn for storage for the last twenty years. Similarly, Tony and his father have paid the property taxes since 1980. The Statement of Evidence also contains the following with regard to Tony Seal's testimony:

> I have the deed for the property from my father in 1997 and recorded in 1999.
>
> My father, Clint Seal, had a deed from Tyler Seal in which Tyler Seal may have kept a life estate - I don't know.
>
> Tyler Seal had a life estate I guess. He stayed with my mom and dad then he went into a nursing home the last two years of his life. He was not able to do anything on the land.…
>
> Tyler Seal was paid rent for the place early on. Later, Tyler Seal's rent for the place was the taxes and the care that my mom and dad gave to him. Tyler Seal died March 1996. We have continued to farm the place after Tyler Seal's death. I have paid the taxes myself since 1984 or 1985. I have farmed it all that time.

In May of 2004, the Trial Court issued a Memorandum Opinion which resolved the remaining issue regarding Defendants' claim of adverse possession. Afer reviewing the relevant facts, statutes, and case law, the Trial Court concluded:

> The Defendants have established by clear and positive proof that their possession of the subject real property has been exclusive, uninterrupted, actual, open, notorious and adverse since at least 1991. The Defendants hold said property by virtue of color of title which purports to convey an estate in fee. As no action at law or in equity was commenced within seven years of Defendant Clint Seal's acquisition of title, this Court concludes that the Defendants Tony Seal and wife, Patricia G. Seal, are vested with good and indefeasible fee simple title. As such, they are protected from any claim of title by Plaintiffs.

Plaintiffs appeal raising one issue. Although not stated exactly as such, Plaintiffs claim that Defendants' possession of the property could not be considered "adverse" until Tyler Seal died in March of 1996. Therefore, in Defendants' "'best case scenario' they can only show 5 years [of adverse possession] after Tyler died and before suit was brought." Because the relevant statute requires seven years of adverse possession, Plaintiffs claim the Trial Court's decision must be reversed.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

On appeal, neither Plaintiffs nor Defendants challenge the Trial Court's conclusion that because of the language in the deed by Hop Seal to Tyler Seal, Tyler Seal was vested only with a life estate interest in the property and, upon his death, "his heirs at law as defined by the rules of intestate succession in Tennessee comprised the class of remaindermen." We will, therefore, assume this conclusion is correct and our resolution of the issues on appeal in no way alters this finding.

Plaintiffs rely on *Quarles v. Arthur*, 33 Tenn. App. 291, 231 S.W.2d 589 (1950) in support of their claim that Defendants' possession of the subject property could not have been adverse until Tyler Seal died in March of 1996. *Quarles* involved, *inter alia*, a claim of adverse possession and one of the issues was when the statute of limitations began to run. According to the Court in *Quarles*:

> As to the application of the statutes of limitations, a reading of the statutes appears to us a sufficient answer. By their terms it is only an "adverse" possession which starts the running of the statute. The holding is not adverse as to the remaindermen until their right of action accrues upon the falling in of the life estate. *Chambers v. Chattanooga Union Railroad*, 130 Tenn. 459, 171 S.W. 84; *Johnson v. Covington*, 148 Tenn. 47, 251 S.W. 893; *Campbell v. Lewisburg & Northern Railroad*, 160 Tenn. 477, 492, 26 S.W.2d 141.

> *Guy v. Culberson*, 164 Tenn. 509, 51 S.W.2d 500, 502, expressly holds that the possession of grantees of the life tenant who undertook to also convey the fee does not become adverse to the remaindermen until the death of the life tenant because they "could assert no immediate interest until after the falling in of the life estate" and "the statute of limitation . . . would not run . . . until the expiration of the life estate."
>
> The sale and conveyance by the holder of the life estate is not an ouster of the remaindermen; at least not unless they elect to so consider it. They can consider the conveyance as passing only the rights of the life tenant and the possession of the grantee as not inconsistent with their own rights to the fee title in remainder. They are not ordinarily affected by the conveyance. The rule is, of course, otherwise where possession is not essential to the right of action. *Bohrer v. Davis*, 94 Neb. 367, 143 N.W. 209, L. R. A. 1918D, 430, *Id.*, 96 Neb. 474, 148 N.W. 320, Ann. Cas., 1915A, 992; Anno. 14 Am. St. Rep. 634, 635.
>
> The possession of the life tenant or one deriving his title and possession from the life tenant does not become adverse as to the remaindermen unless the life estate is renounced and notice is clearly conveyed to the remaindermen that the property is held or claimed adversely and not under the life tenancy. *Lake v. Ford*, 244 Ky. 803, 52 S.W.2d 724; *Forman v. Gault*, 236 Ky. 213, 32 S.W.2d 977; *Russell v. Tipton*, 193 Ky. 305, 235 S.W. 763; *Bretschneider v. Farmers Nat. Bank*, 131 Neb. 495, 268 N.W. 278; *Content v. Dalton*, 122 N.J. Eq. 425, 194 A. 286, 112 A. L. R. 1031; *Wanta v. Potrykus*, 207 Wis. 282, 240 N.W. 183, 241 N.W. 377.

*Quarles*, 231 S.W.2d at 592-93. *See also Hutchison v. Board*, 194 Tenn. 223, 250 S.W.2d 82, 86 (1952) ("[W]e think the overwhelming weight of authority sustains the complainants' insistence that the statute of limitations of 7 years adverse possession does not run against remaindermen during the life of the life tenant."); *Harvey v. Pickel*, 1986 Tenn. App. LEXIS 2722, at **14, 15 (Tenn. Ct. App. Jan. 8, 1986), *perm. app. denied Mar. 24, 1986*, ("Neither the thirty year statute, T.C.A. § 28-2-205, nor any other adverse possession statute is even germane unless there exists in fact an

adverse holding.… [I]f plaintiffs in the instant case were remaindermen subject to a life estate, there was no possessory right adverse to them as long as the life tenant existed. Accordingly, as to such plaintiffs the statute would form no bar.").

Defendants rely on *Fehringer v. Fehringer*, 222 Tenn. 585, 439 S.W.2d 258 (1969) for the proposition that Plaintiffs were only contingent remaindermen and, as such, this class of contingent remaindermen enjoyed only a possibility of reversion "which was created not at the death of Tyler Seal but at the time of the conveyance [by deed] to Tyler Seal…." We disagree with Defendants' interpretation of *Fehringer*.

The opinion in *Fehringer v. Fehringer*, 222 Tenn. 585, 439 S.W.2d 258 (1969) ("*Fehringer II*") was the second occasion the Tennessee Supreme Court had to interpret the will of Anthony L. Fehringer.[1] One of the primary issues in *Fehringer II* was the distinction between a limitation using the word "heirs" versus a limitation using terms such as "heirs of the body", "bodily heirs", or words of similar import. The Supreme Court observed that various Tennessee cases had held that, unless a contrary intent is found, the meaning of a limitation using the term "heirs" must be determined by the statute governing descent and distribution. The term "heirs" would include only those persons who would be heirs of the conveyor under that statute if the conveyor had died intestate. *Fehringer II*, 439 S.W.2d at 260. However, limitations using the words "heirs of his body" or the like would result in a remainder "altogether different in its meaning and effect from a remainder in favor of 'heirs.'" *Id*. Specifically, a remainder to a life tenant's "heirs of his body" is a remainder to that life tenant's lineal descendants. *Id*.

The Supreme Court went on to explain that the last will and testament of Anthony Fehringer devised a life estate to his two sons for their natural life and upon either of their deaths, unto the "heirs of his body." The Court noted that *Fehringer I* had held that the remaindermen there could only be determined at the death of the life tenant. The Court explained this did not mean there would necessarily be any remaindermen. Rather, the Court in *Fehringer I* simply was recognizing that two possibilities could arise in the future: that the life tenant had lineal heirs, or that he did not. In other words, "the remainder was recognized as contingent, and not ready for definition." *Fehringer II*, 439 S.W.2d at 260.

---

[1]The Supreme Court's first opinion is *Fehringer v. Fehringer*, 212 Tenn. 75, 367 S.W.2d 781 (1963) ("*Fehringer I").*

Returning to the present case, we fail to see how *Fehringer II* helps Defendants. *Fehringer II* certainly supports the Trial Court's decision that because the Hop Seal deed used the limitation of "heirs" as opposed to "bodily heirs" or the like, the class of remaindermen were to be defined by the rules of intestate succession in Tennessee. In addition, regardless of whether the remainders are deemed to be contingent, we think *Fehringer II* demonstrates that the triggering event for defining exactly who is in the class of remaindermen is the death of the life tenant. This result holds true regardless of whether the limitation uses the term "heirs" or "heirs of the body."

We agree with Plaintiffs that, as a general rule, possession of land cannot be considered adverse until the death of the life tenant. Simply put, Defendants' possession of the land at issue here could not be considered "adverse" to Plaintiffs until the death of Tyler Seal. However, as noted in *Quarles*, an exception to this rule comes about when the life estate is "renounced and notice is clearly conveyed to the remaindermen that the property is held or claimed adversely and not under the life tenancy." *Quarles,* 231 S.W.2d at 592-93.

Referring to the 1946 Hop Seal deed to Tyler Seal, Defendants contend that they cannot be "charged with notice of a title which expressly conveyed only a life estate." Even though Defendants claim they cannot be charged with notice of the contents of the properly recorded Hop Seal deed, they turn around and claim that the properly recorded deed from Tyler Seal to Clint Seal "gave notice to [Plaintiffs] and the rest of the world that Tyler Seal did not claim a life tenancy only but claimed fee simple absolute ownership of the land described therein." Defendants offer no explanation as to why they cannot be charged with knowledge of the contents of a recorded deed, but at the same time Plaintiffs must be so charged.

We again turn to *Quarles* where the Court offered the following:

[T]he remainderman is not charged with the duty of keeping his estate under constant observation, *Anderson v. Miller*, 103 Neb. 549, 172 N.W. 688; nor is he charged with notice of a conveyance from the life tenant not appearing in his chain of title even though followed by possession by the grantee, *Ontelaunee Orchards v. Rothermel*, 139 Pa. Super. 44, 11 A.2d 543. The life tenant or his conveyee must not only disclose to the remaindermen the basis of his claim, *Superior Oil Corp. v. Alcorn*, 242 Ky. 814, 47 S.W.2d 973, but there must be some clear and positive overt act or express notice, *Trimble v. Gordon*, 270 Ky. 476, 109 S.W.2d 1217, 1219, to start the

running of the statute. The reason underlying these holdings, we assume, is that the possession is not ipso facto inconsistent with the rights of the holders of the future estate. We think their reasoning is sound.

*Quarles*, 231 S.W.2d at 593.

The above portion of the *Quarles* opinion was quoted by the Tennessee Supreme Court in *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956) and described as "excellently reasoned." *Moore*, 289 S.W.2d at 700. *Moore* involved land that was deeded by warranty deed to R.D. Casey and his first wife, Elizabeth. This land was deeded to the Caseys prior to the doctrine of tenancy by the entireties being recognized in this State, so the Caseys were tenants in common and upon the death of either, their undivided one-half interest passed to his or her heirs. *Moore*, 289 S.W.2d at 696. Elizabeth Casey died in 1927 and R.D. Casey married his second wife, Eva Casey, approximately one year later. On March 7, 1941, R.D. and Eva Casey executed a warranty deed to a Ms. Williamson who recorded the deed the next day. Immediately thereafter, Ms. Williamson executed a warranty deed and deeded the property back to R.D. and Eva Casey, and this deed also was duly recorded. *Id.* at 696-697. R.D. Casey died in 1950 leaving the property to his wife Eva Casey in fee simple. Eva Casey then deeded the property to Lizzie Moore and, after the heirs of Elizabeth Casey claimed a one-half interest in the property, Eva Casey and Lizzie Moore filed suit to quiet title.

One of the issues resolved by our Supreme Court was whether the 1941 conveyance by R.D. and Eva Casey to Ms. Williamson, and the immediate reconveyance by Ms. Williamson to the Caseys with both deeds being property recorded, constituted an ouster and was "sufficient notice to start the running of the statute, in 1941." *Id*. at 698. In arguing that this was sufficient notice, Eva Casey and Lizzie Moore relied upon Tenn. Code Ann. § 64-2602 which provided that "All of said instruments so registered shall be notice to all the world from the time they are noted for registration, as prescribed in § 816; and shall take effect from said time."[2] The Supreme Court concluded this statute provided constructive notice, as opposed to actual notice. The Court then stated:

This doctrine of constructive notice by mere presumption of law, arising from the operation of the registry acts, is to be taken with

---

[2] This statute is currently codified at Tenn. Code Ann. § 66-26-102 and remains essentially unchanged. The current version provides that "All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time."

certain qualifications. It is very different in its effect from actual notice: actual notice binds the conscience of the party; constructive notice, by mere operation of the registry acts, may bind his title, but not his conscience.… The object of registration is to give notice to creditors and subsequent purchasers.

*Moore*, 289 S.W.2d at 698 (quoting *Lally v. Holland*, 31 Tenn. 396, 401 (1852)). After observing there was nothing in the record to show an ouster other than the recorded deed, the Supreme Court held this was insufficient notice and the Caseys should not be "allowed to profit merely by reason of the deed which was recorded without any other notice or act." *Moore,* 289 S.W.2d at 699. *See also Home Federal Bank, FSB, of Middlesboro Kentucky v. First Nat'l Bank of Lafollette, Tennessee*, 110 S.W.3d 433, 440 (Tenn. Ct. App. 2002)("'Actual notice' is clearly different from 'constructive notice'").

Although some of the facts in this case could have been developed more fully, we know that Tyler Seal was granted a life estate in the property by deed in 1941. Although he had only a life estate interest, Tyler Seal purported to convey a fee simple interest in the property to his brother, Clint Seal, in 1968. Clint Seal did not record the deed at that time and the deed still was unrecorded in 1984, at which time Clint Seal was farming the property. By the beginning of 1991, Clint and/or Tony Seal had been farming the land for approximately seven years, presumably with Tyler Seal's permission. None of these facts are such that the remaindermen should have been alerted to a claim of adverse possession on the property. The only changes during the next five years were that, unbeknownst to Plaintiffs, Clint Seal recorded a deed on August 1, 1991, and Tyler Seal was moved into a nursing home two years prior to his death in March of 1996. We also note that Tony Seal testified that his father, Clint Seal, and/or he paid Tyler Seal rent for the property from "early on." There is absolutely no evidence that Defendants informed any other family members about the deed from Tyler Seal or that the deed had been recorded. Prior to August 1, 1991, Defendants' possession of the property was not necessarily adverse to Plaintiffs' interests as remaindermen. We do not believe the facts support a conclusion that Plaintiffs had sufficient notice that the character of this possession instantly was changed to an adverse possession simply by Clint Seal recording a twenty-three year old deed without Plaintiffs' knowledge of the existence of the deed or that it had been filed. To hold otherwise would require remaindermen to go to the Register of Deed's office on frequent intervals to ascertain if a deed from a life tenant has ever been filed by someone which could later result in an adverse possession claim.

-10-

In *Moore v. Cole*, *supra*, Justice Swepston filed a separate concurring opinion to emphasize that:

> [A]s a practical matter … it would be utterly unworkable to hold that the mere registration of a deed by one tenant in common purporting to convey the entire property to a third party would be an ouster of other tenants in common, in the absence of possession by said grantee under said deed so as to amount to adverse possession.
>
> Such a rule would require every tenant in common to go to the Register's Office at frequent intervals to examine the records for such a deed. That office would be so flooded with tenants in common that the Register would be unable to function.

*Moore*, 289 S.W.2d at 700.

It is also important to note that even if Clint Seal's recording of the deed in 1991 did operate to give Plaintiffs notice of Defendants' claimed adverse possession, Defendants have offered no explanation why they would not be charged with notice that Tyler Seal had only a life estate because the deed containing that information also was duly recorded. This information would be in Clint Seal's direct chain of title. If Defendants are charged with this notice, then they knew Tyler Seal was conveying to Clint Seal something he simply did not have, i.e., a fee simple interest in the land. It necessarily follows that Clint Seal conveyed to Tony Seal that which Clint Seal, likewise, knowingly did not possess.

We conclude that under the facts of this case, Defendants' possession of the property could not have become adverse to Plaintiffs' interests until the death of Tyler Seal in March of 1996. We further conclude that neither was Tyler Seal's life estate ever renounced nor were Plaintiffs given notice which "clearly conveyed to the remaindermen that the property is held or claimed adversely and not under the life tenancy." *See Quarles,* 231 S.W.2d at 592-93. In light of these conclusions, the Trial Court erred when it held that Defendants began adversely possessing the property in 1991. The Trial Court also erred when it concluded the seven year statute of limitations contained in Tenn. Code Ann. § 28-2-103 for Plaintiffs to bring this action had expired before the lawsuit was filed. Since the statute of limitations did not begin to run until March of 1996, this lawsuit was filed timely in May of 2001.

**<u>Conclusion</u>**

The Judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceeding as necessary and consistent with this Opinion and for collection of the costs below.  Costs on appeal are assessed equally against the Appellees, Clint Seal and Tony Seal.

_____
D. MICHAEL SWINEY, JUDGE