## SWANN v. AUSTELL et al.*

(Circuit Court of Appeals, Fifth Circuit. November 25, 1919.)

No. 3405.

1. WILLS ⬤═853—ACCELERATION OF REMAINDER CONTRARY TO TESTATOR'S INTENT.

The doctrine of acceleration of remainders is not applicable, where its application would go counter to the testator's intention.

2. WILLS ⬤═634(12)—VESTED OR CONTINGENT REMAINDER.

Under a will devising real estate to testator's widow for life, with remainder to his children, and providing that "in the event any of my children shall die before the division of any part or the whole of my estate * * * leaving no issue or surviving children, then it is my will that the portion * * * that would have otherwise gone to such deceased child or children shall be divided among my other surviving child or children, share and share alike," the remainder *held* not to vest until death of the widow, and then in the surviving children, to the exclusion of the estate of a deceased child leaving no issue.

3. WILLS ⬤═802(2)—EFFECT ON VESTING OF REMAINDER BY RENUNCIATION OF WIDOW.

That a widow renounced under the will of her husband, which gave her a life estate in certain real estate, where the dower assigned gave her the same estate in such property, *held* not to affect the time of vesting of the remainder as provided in the will.

4. WILLS ⬤═630(4)—CONTINGENT INTERESTS UNDER DEVISE TO EXECUTOR WITH POWER OF SALE.

Under a will vesting title to real estate in executors, with power to sell in their discretion, the proceeds to go to the then surviving children of testator and children of deceased children, where sale was deferred because of outstanding dower interest of widow, and in the meantime a child died leaving no issue, her estate *held* to have no interest in the property.

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Suit in equity by Alfred R. Swann against W. W. Austell, executor, and others. Decree for defendants, and complainant appeals. Affirmed.

For opinions below, see 253 Fed. 807; 257 Fed. 870.

Daniel W. Rountree and Clifford L. Anderson, both of Atlanta, Ga., for appellant.

Charles T., L. C. & J. L. Hopkins, Eugene R. Black, Sanders McDaniel, and King & Spalding, all of Atlanta, Ga., for appellees.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

GRUBB, District Judge. This is an appeal by Alfred R. Swann from a decree of the District Court of the United States for the Northern District of Georgia, dismissing his bill, which he had brought in that court against W. W. Austell as the sole surviving executor of the will of Alfred Austell, deceased, W. W. Austell, Mrs. Lelia A. Thornton, and Alfred Austell, Jr., children of the testator, and Earl Austell and Mrs. Idoline Austell Watts, children of W. W. Austell.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

261 F.—30   *Certiorari denied 251 U. S. —, 40 Sup. Ct. 344, 64 L. Ed. —.

Alfred Austell, Sr., died testate, a resident of Fulton county, Ga., in December, 1881. At the time of his death his heirs at law were his widow, Mrs. Francina C. Austell, and his four children, W. W. Austell, Mrs. Lelia A. Thornton, Mrs. Emma Jane Swann, and Alfred Austell, Jr.

The will of Alfred Austell, Sr., was duly probated in Fulton county according to the laws of Georgia, and the executors named therein were duly qualified; but all of such executors are dead, and have been dead for a number of years, with the exception of W. W. Austell, who is the sole surviving executor.

James Swann was the husband of Mrs. Emma Jane Swann, one of the children of the testator. Mrs. Swann died in April, 1893; James Swann, her husband, died in April, 1903; and testator's widow died in May, 1917.

Appellant is the sole devisee of his brother, James Swann, who was the sole devisee of his wife, Emma Jane Swann, and by this bill he seeks to establish his title to an undivided one-fourth interest in three certain tracts of land which form a part of the estate of Alfred Austell, Sr., and were disposed of under the will. These three tracts of land, for brevity, may be designated: (1) The home place, on Marietta street, in the city of Atlanta; (2) the north part of what is known as the Trout House lot, on North Pryor street, at the corner of what is known as Edgewood avenue, formerly called Line street; and (3) a farm in Campbell county, Ga., called the Lathem farm—together with one-fourth of the rents, issues, and profits which have been received from said properties since the death of the testator's widow.

The theory of the bill is that a one-fourth undivided fee-simple indefeasible interest in each of said three tracts of land vested in Mrs. Emma J. Swann during her life, and therefore passed under her will to her husband, and under his will to appellant; it being conceded that if, at the time of her death, the interest had become vested in Mrs. Swann, it would pass under the successive devises to the appellant.

The home place, on Marietta street, was disposed of by item 1 of said will, which follows:

"Item 1. After the payment of all my just debts, I give, bequeath and devise, to my beloved wife, Francina, the dwelling house and lot, whereon and wherein I now reside, which fronts on Marietta street in the city of Atlanta, in said county and state, being on the south side of said street, and is bounded on the west by the lot of the First Presbyterian Church of Atlanta, on the east by the lot of C. Kontz, except that portion of said lot which fronts on the right of way of the Western & Atlantic Railroad, and extends back from said right of way to the back line of said lot of said First Presbyterian Church.

"To have, hold, use and occupy, as a home for her and our children for and during the natural life of my said wife, or until she shall marry again.

"Upon the happening of either of which events, said property shall go to and belong to my children that may be living at the time of the death or marriage of my said wife, share and share alike, or if any of my children shall be dead, at that time, leaving children surviving them, such last mentioned children shall take the share of their deceased parent;

"And I expressly devise and direct that the said dwelling house and lot shall not be encumbered by, or subjected to the payment of any debt, she, my said wife, may contract, or any contracts she may make, but shall remain during her life, or widowhood, a secure and unmolested home and residence for her and my said children, while they reside with her, and under her maternal

care and protection; not meaning by this, however, that she shall be compelled to have any of our children live with her, unless she shall so desire."

The Trout House lot was disposed of by item 2 of the will, which follows:

"Item 2. It is my will and desire, and I hereby devise and direct that my executors hereinafter named, shall not sell, during the life of my said wife, any of my store houses, or other houses, on the lot known as the Trout House lot, on the corner of Decatur and Pryor streets, in said city of Atlanta, fronting on Decatur street one hundred feet, more or less, and extending back at right angles with Decatur street, and on Pryor street, to Line street, but they may build, out of any funds that may come into their hands, if they deem it best, other storehouses on the part of said lot adjoining the building known as the Austell corner.

"I direct my said executors to collect the rents of the store houses, or other houses, as may be on said Trout House lot, and out of the rents so collected, that they pay my said wife the sum of two thousand dollars, payable in equal quarterly payments, for each and every year of her natural life, whether she marries again or not.

"And my executors are directed to take the receipt for the same from herself alone and to pay it to no other person.

"My executors are further directed, after paying my said wife the sum of money aforesaid, to divide the balance equally between my said children, and after the death of my said wife to sell the said store houses and lot, and divide the proceeds of such sale among my children, share and share alike, the child or children of any deceased child of mine to take the share of their deceased parent."

The Lathem farm was a part of the residue which was disposed of by item 9 of the will, as follows:

"Item 9. I further will and direct that all the residue of my estate, of whatever kind or nature, whether real, personal or mixed, not hereinbefore disposed of shall be sold, or converted into money, by my executors, at such time and place and under such circumstances, as they may deem best, by public sale, such reasonable notice of the time and place of sale as they may deem best, to be given by publication and the proceeds to be equally divided between my children, share and share alike."

As having some bearing upon the construction of other items of the will, item 10 of the will should be considered. It is as follows:

"Item 10. In any item of my will, where a division of property is directed to be made, between my children, I hereby declare it to be my will and desire that if any of my children should be dead, at the time such division is to be made, leaving any child or children surviving them, that such surviving child or children shall take the portion of their deceased parent.

"And in the event any of my children shall die, before the division of any part or the whole of my estate, as provided for in this, my will, leaving no issue, or surviving children, then it is my will and desire that the portion of my estate that would have otherwise gone to such deceased child or children, shall be divided between my other surviving child or children, share and share alike."

The widow renounced the provisions of the will in her favor and elected to take dower, and, during the year 1882, some months after her renunciation, it was assigned to her as follows: (1) A life estate in the home place, on Marietta street; (2) a life estate in the north half of the Trout House lot; (3) a life estate in one-third of the Lathem farm; and (4) a life estate in one-third of a plantation in Douglass

county, Ga., known as the Gorman plantation, which was devised by item 5 of the will to Alfred Austell, Jr.

In 1883, and by a contract to which the executors, the widow, and all the children were parties, the widow relinquished to Alfred Austell, Jr., her dower estate in the Gorman plantation, and "in exchange therefor" all the other parties to the contract relinquished to the widow "all interest during her life to that part of the Lathem place which was not set apart as dower."

In 1894 W. W. Austell conveyed by deed to his three children all his interest in said three tracts of land, subject, however, to certain reservations in his favor during his life. One of his children died, and his interest was inherited by his father, brother, and sister, all of whom are defendants to said Bill.

In 1886 the following verdict and decree was made by the superior court of Fulton county, Ga.:

"W. J. Garrett et al. v. Alfred Austell et al.

"We, the jury, find that the defendant Mrs. Francina Austell has no interest in the property described in the bill as the Trout House lot, on the corner of Decatur and Pryor streets, in the city of Atlanta, fronting on Decatur street one hundred feet, more or less, and extending back at right angles with Decatur street, and on Pryor street to Line street; and we further find that the executors of Alfred Austell, deceased, shall give thirty days' notice by publication, in the Atlanta Constitution, a newspaper published in the city of Atlanta, and sell said property on the premises at public outcry for cash and divide the proceeds of the sale in equal portions among the four children of said Alfred Austell, deceased, namely, Mrs. Lelia A. Thornton, Mrs. Emma J. Swann, W. W. Austell, and Alfred Austell, Jr. This Nov. 26, 1886.                                    W. Hugh Hunter, Foreman.

"Whereupon it is considered and decreed that defendant Mrs. Francina Austell has no interest in said property, so described in the bill and the verdict, and it is further considered and decreed that said executors shall give thirty days' notice in the Atlanta Constitution, a newspaper published in the city of Atlanta, and sell said property on the premises at public outcry for cash, and divide the proceeds of the sale in equal portions among the four children of the testator, namely, Mrs. Lelia A. Thornton, Mrs. Emma J. Swann, W. W. Austell, and Alfred Austell, Jr.  Nov. 26, 1886.
                                    "Marshall J. Clarke, Judge S. C. A. C."

The pleadings in said case were not recorded and were lost, and because of the lapse of time, over 30 years, there was no one living by whom their contents could be proven, and these facts were shown on the hearing. However, the verdict and decree were recorded upon the minutes of said court, and were properly alleged and proven. Their admission was objected to, because unaccompanied by the proceedings on which the decree was based; but they were excluded solely on the ground of irrelevancy.

The north part of this property had been set apart as part of the widow's dower about four years before this decree was rendered, and in pursuance of the authority contained in this decree the executors in fact sold only the part not set apart as dower.

Appellant contends that an interest in the home place and in the Lathem farm vested in Mrs. Swann under the will, and that an interest in the north part of the Trout House lot vested in her under the will, and also under the verdict and decree of November 26, 1886. Ap-

pellees contend that no interest in either tract vested in Mrs. Swann, either under the will or under the verdict and decree, but that the entire interest in each thereof vested in testator's three children who survived the widow, to wit, W. W. Austell, Mrs. Thornton, and Alfred Austell, Jr.

The foregoing statement of the case is adopted from the brief of the appellant. The determination of the question presented by the appeal depends upon the time when the interest in the three tracts of land vested in the devisees, with relation to the time of the death of the widow of the testator.

[1-3] 1. With reference to the "home place," the estate in remainder created by the will in the children of the testator must have been either a defeasible fee or a contingent remainder. If the former, it vested in the children of the testator, who were living at his death, subject to be divested, if any one of them died without issue before the death of the widow of the testator, or before her marriage in the event she did marry. Mrs. Swann died without issue before the death of Mrs. Austell, and while she was unmarried. Her death without issue and while Mrs. Austell was unmarried operated to divest the defeasible title that was vested in her upon the death of the testator. If the remainders were contingent, the estate in remainder devised to Mrs. Swann never vested at all, since she died without issue before the death or marriage of her mother.

We do not think that the remainder estate was accelerated by Mrs. Austell's renunciation of the provisions of the will in her favor. If the remainders were contingent, there was no such acceleration, because acceleration applies only in case of vested remainders. The doctrine of acceleration is not applicable where its application would go counter to the testator's intention. It seems plain that in this case the testator's intention was to postpone the vesting of the remainders until Mrs. Austell's marriage or death, and to distribute it among the then living children and children's children of the testator. In view of the fact that the dower estate of Mrs. Austell in the "home place" was identical in quantity and duration with that devised to her in the will of her husband (except for her second marriage, which did not happen), and so was exactly what her husband had provided for her by his will, we do not think that the fact that it came to her by operation of law, instead of through the will of her husband, should have the effect of setting aside the testator's manifest intention as to the time the estates in remainder created by his will were to take effect; i. e., after the estate devised to his wife should cease.

[4] 2. With reference to the "Trout House" property and the "Lathem farm," the will created no estate in remainder, either vested or contingent, in the children of the testator. The title to these two tracts was vested in the executors, until they were sold by the executors; and, upon sale, the proceeds of the sale were to go to the then living children and children's children of the testator. Sale of the "Trout House" property was to be deferred by the terms of the will until after the death of Mrs. Austell. Sale of both pieces was deferred until the happening of that same event, because of the dower interest

of Mrs. Austell, which was outstanding in each tract, under the laws of Georgia. Title remained in the executors until Mrs. Austell's death, in trust for the purpose of the will; and the beneficial interests did not vest in the children of the testator until the executors had sold the properties for division. No sale was made of either tract during the lifetime of Mrs. Swann, and she died without issue. Her share, therefore, went to the children and children's children, who survived her and were living when the properties were sold.

It is contended that the devise to the executors came in conflict with the law against restraints upon alienation of lands. In the case of the "Lathem farm" there was no restraint upon the power of the executors to sell at any time they chose after title vested in them. In the case of the "Trout House" property, the restraint imposed by the terms of the will was no greater in duration than that imposed by the law, by reason of the outstanding dower, which prevented an earlier sale. In each it was the duration of the life of Mrs. Austell.

The trusts conferred upon the executors by the terms of the will were active and executory, not executed, and the provision of the Georgia Code (section 3737), that "when a trust is executed the legal title and the equitable interest immediately merge into the beneficiary," would not, therefore, apply.

The prior case of Garrett v. Austell affected only a part of the "Trout House" property, not involved in the present case. We think it was not controlling in this case, since the effect of the case was that all the heirs, then of age and competent to act, consented that the executors might sell in anticipation of the death of Mrs. Austell, who had no interest in that part of the property that was so sold.

Finding no error in the decree of the District Court, the decree is affirmed.