**HARDIN et al. v. HARDIN et al.**

No. 12906.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 25, 1933.

E. W. Bounds, of Fort Worth, for appellants.

Alexander & Bird, Rufus S. Garrett, McGown & McGown, B. E. Godfrey, Chas. Kassel and Billingsley & Billingsley, all of Fort Worth, Thompson, Knight, Baker & Harris, of Dallas, and Sleeper, Boynton & Kendall, of Waco, for appellees.

DUNKLIN, Chief Justice.

On November 9, 1928, Mrs. Lucy Avalina Hardin departed this life at the age of 71 years, leaving surviving her three children, Frank M. Hardin, Susan Kinnebrew, and Deana Searcy, and her husband, H. H. Hardin, as her only heirs at law. She left an estate consisting of her one-half interest in the community property of herself and surviving husband of the estimated value of $202,686.22 and a will disposing of it in the following manner, to wit: $1,000 each to her three children, two sons-in-law, one daughter-in-law, and one grandson, making a total of $7,000, and the residue of the estate to her surviving husband, H. H. Hardin.

On February 26, 1929, the will was admitted to probate in the county court of Tarrant county, and on the same day H. H. Hardin qualified as independent executor of the estate under the provisions of the will. On September 9, 1932, which was 3 years, 6 months, and 13 days after the will had been admitted to probate, the three surviving children of the testatrix, Frank M. Har-

din, Susan Kinnebrew, and Deana Searcy, joined by her husband, Ben W. Searcy, filed suit in the county court of Tarrant county, where the will had been probated, to set aside the will and the order probating the same on allegations that its execution was not the voluntary act of the testatrix, but was the result of the domination and undue influence of her husband, H. H. Hardin. On August 19, 1932, judgment was rendered in that suit sustaining the allegations upon which the contest was urged and setting aside the will and the order of the court probating the same.

From that judgment an appeal was taken to the district court of Tarrant county by Wm. Cameron & Co. and others who were purchasers of the property from H. H. Hardin devised to him by the will and others holding mortgage liens executed by H. H. Hardin on property devised to him and other unsecured creditors who had extended credit upon representations by H. H. Hardin that he had a valid title to the property devised to him, and also by W. E. Connell as receiver for H. H. Hardin.

When the case reached the district court, four other creditors of H. H. Hardin with like claims filed pleas of intervention in the suit. All the parties mentioned sought a probate of the will as the same had been originally probated in the county court.

Judgment was rendered in favor of those parties, admitting the will to probate; from which this appeal has been prosecuted by the three children of the testatrix.

Article 3315, Rev. Civ. Statutes, reads as follows: "Any person interested in an estate may, at any time before any character of proceeding is decided upon by the court, file opposition thereto in writing, and shall be entitled to process for witnesses and evidence, and to be heard upon such opposition as in other suits."

In Arai v. Saenz (Tex. Civ. App.) 52 S.W. (2d) 383 (writ refused), it was held that an administrator of an estate could not contest the probate of a will because he was not interested in the estate. In Daniels v. Jones (Tex. Civ. App.) 224 S. W. 476 (writ refused), and other cases there cited, it was held that a creditor of a testator did not have such interest in the estate as would give him the right to contest a will. In this connection we deem it not improper to call attention to article 3314, Rev. St. 1925, which provides that, upon the death of any person, his estate passes to his devisees and legatees, or heirs, subject to the payment of his debts, except such property as may be exempted by law. The priority of right thus given, it seems to us, might, as a general rule, be held to furnish a further reason for denying a creditor the right to contest a will which could not operate against him even if admitted to probate.

Since the purport of the pleadings of appellees was not to contest the will, but was to sustain and probate it, and since they were not creditors of the testatrix, article 3315 of the statutes, and decisions referred to above, have no proper application here.

Article 3698, Rev. Statutes, which is a part of the title relating to estate of decedents, reads as follows: "Any person who may consider himself aggrieved by any decision, order, decree or judgment of the county court, shall have the right to appeal therefrom to the district court of the county upon complying with the provisions of this chapter; provided that in appeals from orders or judgments, * * * the administrators shall continue the prosecution of suits then pending in favor of the estate, and if on appeal from probate court a different administrator shall be appointed, he shall be substituted in such case."

■ The property devised to H. H. Hardin belonged to the estate of the testatrix, and passed to her husband under the terms of the will when the same was admitted to probate by the county court, subject to defeasance only in the event that the order should thereafter be set aside in a suit to contest the validity of the will such as was instituted by the children of the testatrix. The record shows that, after the will was admitted to probate, and before the institution of the contest by the children of the testatrix, H. H. Hardin claimed title to the property so devised to him, and sold some of the same to some of the appellees, and executed liens thereon in favor of several others to secure his indebtedness for money loaned, and obtained credit from others of the appellees for goods purchased upon representations made to them that he had legal title to the property so devised to him. The record shows further that, before the contest was filed, the children of the testatrix, on June 3, 1929, executed an instrument in writing acknowledging receipt of bequests made to them in the will, aggregating $7,000, and released and quitclaimed "all further right and title in the estate of Mrs. Lucy A. Hardin, deceased, that we may be entitled to by virtue of being legacies of said specific amount." That instrument was filed for record in the office of the county clerk of Tarrant county on February 24, 1932, more than six months prior to the institution of the contest. Also that Ben Searcy, husband of Deana Searcy, and Frank Hardin aided and assisted in the consummation of purchases made by Wm. Cameron & Co. from H. H. Hardin, one of which was for a consideration paid to H. H. Hardin of the sum of $16,000 or $17,000, and another purchase from H. H. Hardin of property worth $67,000. Ben W. Searcy also testified that he procured copies of the will and the order probating the same, and filed them for record in various counties in connection with the

titles of H. H. Hardin, and that he signed the release noted above to aid H. H. Hardin in the sale of the property that had been devised to him. The testimony of Mrs. Susan Kinnebrew and Mrs. Deana Searcy was to the effect that they both signed the release and turned it over to their father, H. H. Hardin, for use in his business.

The record further shows that in all their transactions with H. H. Hardin appellees in good faith relied upon the devise to H. H. Hardin and the order of court admitting the will to probate, and upon the release executed by his children, and other acts on their part which indicated their acquiescence in the transactions by their father out of which the claims of appellees arose, and which transactions occurred prior to the institution of the contest.

■ Proceedings to probate the will in the first instance and to set it aside upon the contest, and the judgment rendered thereon, were proceedings in rem, and such judgments, when final, are binding upon all persons asserting claims against it until set aside by direct proceedings instituted for that purpose (13 Tex. Jur. § 39, p. 626) and in the same court (25 Tex. Jur. § 230, p. 647). Since the county court and the district court on appeal had exclusive jurisdiction to probate the will and to determine the contest later filed, and since the pleadings of the contestants were sufficient to serve as a basis therefor, the judgment sustaining the contest was not subject to collateral attack by the appellees. 26 Tex. Jur. p. 417, § 569. The title to all the property in controversy was acquired by H. H. Hardin under the will of the testatrix. That title, together with all rights of the appellees as purchasers and creditors growing out of transactions with H. H. Hardin, would be destroyed if the will was annulled by the later order of the county court sustaining the contest. The only remedy of appellees to avoid that decree was by way of a direct attack upon it either in the county court or by appeal to the district court. And we think it clear that they had such an interest as entitled them to prosecute the appeal to the district court from the order of the county court sustaining the contest. 13 Tex. Jur. § 57, p. 641; article 3339, Rev. Civ. Statutes of 1925.

■ Complaint is made of the action of the court in refusing to admit evidence offered by appellants to sustain their allegations that the will was executed under the undue influence of H. H. Hardin upon the testatrix. The testimony of H. H. Hardin, given on the 17th day of August, 1932, on the trial of the contest in the county court in which he was made a party defendant by the contestants and which was admitted without objection on the part of his attorney then appearing for him, was to the effect that he prepared the will without consultation with the testa-

trix and induced her to sign it without any knowledge on her part of its contents and solely by reason of his request that she execute it; and the further proffered testimony of Frank Hardin that in June, 1932, H. H. Hardin made the following statement to the witness: "While you children do not know it, the will of Lucy A. Hardin is not a valid will, because I wrote that will myself and had Mrs. Lucy A. Hardin to sign it without knowing what was in it. She never did ask me to write her a will and did not know that I was going to write her will. I did not tell her what the will contained and she did not read it, but signed it at my request without knowing its contents and without knowing that the instrument she signed was a will."

It is insisted that that testimony was admissible because it showed an admission by H. H. Hardin against his interest.

Aside from the contention of appellees that the statements so made by H. H. Hardin, after the rights of the appellees had accrued and under all the surrounding circumstances, manifestly grew out of a collusion between H. H. Hardin and his children to defeat the claims of appellees asserted in this suit, we have reached the conclusion that the court did not err in refusing to admit the testimony. As noted in 17 Tex. Jur. § 746, p. 589, declarations in disparagement of title even when made prior to a sale thereof are not admissible on the theory of it being against the interest of the declarant when the same will affect innocent purchasers of property for value. And on page 591, § 247, of the same volume, the following is said: "As a general rule, declarations of a vendor of real or personal property in derogation of the title conveyed, made subsequent to his conveyance and without the presence or knowledge of the vendee, are inadmissible against the vendee or those claiming under him, for the reason that when the vendor has parted with his property he has no more power by his acts or declarations to impress the title than a mere stranger; furthermore his declarations are hearsay testimony generally. This rule applies to acts of the vendor in disparagement of the title, to declarations of a mortgagor made after the execution of the mortgage, to declarations of the plaintiff in execution made after an execution sale, to admissions against interest," etc.

The record shows that the declarations of H. H. Hardin so offered were made after the rights of the appellees had attached.

■ The burden was on the contestants to overcome the presumption of validity of the will, and we have reached the conclusion that the evidence introduced was insufficient, as a matter of law, to discharge that burden. Mrs. Kinnebrew, one of the contestants, testified that her mother had been an invalid for 12 years, suffering from high blood pressure

and heart trouble, and, according to her information, high blood pressure affects both the heart and the mind; but she did not qualify as an expert on that point. Dr. Grogan, who was the attending physician of the testatrix, testified that on some occasions she was capable of transacting business and on others she was not. But neither he nor any other witness testified that she was mentally incapable of understanding the purport of the will at the time. she executed it, or gave any testimony tending to support the further allegation that the will was executed under undue influence of her husband, H. H. Hardin.

 It is our further conclusion that the action of the contestants related above in accepting the legacies beqeathed to them and acquiescing in the dealings of H. H. Hardin with the property devised to him, with full knowledge of the contents of the will, and the acquisition of the rights of appellees long before the contest was filed, based on reliance on the validity of the devise to H. H. Hardin and the order of court probating the will, was sufficient of themselves, as a matter of law, to sustain the plea of estoppel urged against the contestants.

For the reasons indicated there was no error in the action of the trial court in instructing a verdict in favor of appellees; and the judgment of the trial court is in all things affirmed.