· **HOWTH v. FARRAR et al.***

No. 8545.

Circuit Court of Appeals, Fifth Circuit.

Jan. 26, 1938.

*Rehearing denied March 25, 1938.

HOLMES, Circuit Judge, dissenting.

———◆———

Wm. Andress, Jr., of Dallas, Tex., for appellant.

Wm. E. Allen, of Fort Worth, Tex., for appellees contra.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

The suit was in trespass to try title in statutory form, for 640 acres of land in Erath county, Texas. The chain of title under which plaintiff claimed the land sued for was: (1) A patent to William E. Howth, dated January 9, 1847. (2) The last will and testament of W. E. Howth, dated May 27, 1855, admitted to probate April 30, 1860 in Austin county, Texas, devising the tract to the eldest son of W. E. Howth for life, and upon his death to his eldest living son. (3) Certified copy of a certificate of the death of William E. Howth, Jr., July 31, 1930.

All the numerous defendants filed a common answer and cross-action, in which the particular part of the survey each owned and the particular improvements each had placed on it, were set out, and as to each defendant there was a plea of not guilty, and the following special defenses.

(1) That item 2 of the will [1] on which plaintiff relies was and is wholly void, invalid, and inoperative under the constitutional prohibition against perpetuities; (2) that the property described in the will was not identified with the land sued for; (3) that each of the defendants had limitation title to the tract he owned and claimed, under the 3, 5, 10, and 25 years' statutes of limitations of the state of Texas; (4) a plea of purchase in good faith and for value without notice of plaintiff's claim under the will, that it had not been recorded nor had any notice thereof been had until long after the predecessors in title of the respective defendants had in good faith for value without notice, acquired title.

The case was tried to the court upon a jury waiver. Plaintiff proved the patenting of the land to his ancestor, the making of the will and its probate, and the filing

---

[1] "Item 2nd. I give and bequeath to my eldest son living at the time of my death, a tract of land situated in Milam District, McLennan County, described in Patent by metes and bounds, and known as the Donation Grant for participating in the storming of San Antonio de Bexar in Decr. 1835. To have and to hold the same during his life remainder to his eldest son living at the time of his death; but failing such issue, then to my second son for life remainder to his eldest son living at the time of his death, but failing such issue, then to my third or other sons as the case may be in like succession. But failing male issue of my male issue, then said land to be sold and the proceeds to be distributed among my descendants equally."

of the will in the deed records of Erath county August 20, 1889. He proved that there were two Wm. E. Howth surveys in Erath county, and that for a great many years the will of Wm. E. Howth had been included in every abstract made to the land; that there was also included in it an affidavit made in 1912 as to the Howth heirship. The following facts were stipulated:

That William E. Howth, the original patentee to the land, died in Austin county, Texas, in 1859, leaving surviving him his widow, Mary Ann Howth, who died intestate in 1887, five children, Ophelia Ann, born in 1842, still living, William Edward, born in 1845, died July 31, 1930, Edwin Simpson, born in 1849, died about 1915, Mary Ann, born in 1851, died about 1903, and Emma, born in 1853 still living, and no descendants of deceased children. William Edward Howth, Jr., was the eldest son, of William E. Howth, the patentee. At the time of his death, July 31, 1930, he was survived by his widow, who has since died, and by five children, the oldest of whom is the plaintiff in this suit. Erath county was created on January 25, 1856, out of lands theretofore situated and contained in Bosque and Coryell counties. Coryell county was created in 1854 out of lands theretofore situated and contained in McLennan and Bell counties. Bosque county was created in 1854 out of lands theretofore situated in McLennan county. McLennan county was created in 1850 out of lands theretofore situated in Milam and Navarro counties. On May 1, 1877, a deed to their right, title, and interest in the land in controversy was executed and delivered to W. E. Howth, Jr., by his brothers and sisters, all the surviving children of William E. Howth, Sr.[2] During the years 1878 to 1882 William E. Howth, Jr., from time to time and in parcels sold and conveyed to remote grantors of the defendants the survey claimed by plaintiff in this suit. The respective defendants herein have and hold regular and complete chains of title to the lands claimed by them from such remote grantors.

Defendants, as to the tract each owned, proved open, notorious, hostile and adverse possession of the lands under claim of title and with valuable improvements made thereon, for thirty to forty years.

The land passed out of W. E. Howth, Jr., by the following deeds: To J. P. Hardin, on March 6, 1879, conveying 160 acres "to him, his heirs, executors, administrators and assigns, in fee simple absolute." Deed, June 21, 1878, for 180 acres, to "McClesky, his heirs and assigns forever." Deed, January 11, 1879, to Evan Jones for 60 acres. This deed provides: "To have and to hold the same unto the said Evan Jones, his heirs and assigns, forever. And I, the said W. E. Howth, for myself and my heirs, do hereby covenant and agree to and with the said Evan Jones that I am now the owner of the said premises, and I am seized of a good and indefeasible estate of inheritance therein, and that I have full right and power to sell the same, that the said Evan Jones, his heirs and assigns, may forever hereafter have, hold, possess and enjoy the same without any molestation or interruption by any person whatsoever lawfully claiming the same or any part thereof." Deed August 7, 1879, to Morton, conveying 50 acres "to him, his heirs and assigns, forever." Deed to G. W. Jones, February 14, 1882, conveying 80 acres "to him, his heirs and assigns, forever."

The District Judge thought the will valid. He could not see in it any violation of the rule against perpetuities. He thought, however, that defendants and those under whom they claim were innocent purchasers of the land for value without notice of plaintiff's claim, because the will was probated in Austin county, and was not recorded in Erath county until long after title had emanated from the sole heirs of Howth, who, but for the will would have been the owners of the land. He found for defendants for all the land in controversy on their plea of innocent purchase. Though he expressed himself as inclined to think the pleas of limitation, especially that of 25 years, good, he did not decide those issues.

Appealing from it, appellant insists that the judgment against him was wrong; that it should have been for him. Appellees, on their part, insist that the judgment was right, not alone for the reasons the District Judge gave, but for all the reasons they advanced below.

■ We have examined all of these reasons; we find some of them well taken,

---

[2] The granting clause in the deed read: "We do bargain, sell and convey to W. E. Howth, Jr. all our right, title and interest if any we have, in and to the following tract of land in Erath County originally granted to W. E. Howth."

some not. We agree with the District Judge that the will did not violate the rule against perpetuities, that it created a valid remainder in plaintiff. We agree with him, too, that the description in the will, taken in connection with the other evidence, is quite sufficient to identify it with, and confer upon plaintiff as devisee, a valid remainder in the land in controversy. This leaves for consideration only the two other defenses: (1) Of innocent purchase; (2) of limitation.

As to innocent purchase, appellant insists that there is no proof that anything of value was paid; no proof that defendants' predecessors in title bought the property without knowledge of plaintiff's claim, and finally, that the probate of the will being a proceeding in rem, of which all persons are charged with knowledge, and the will having been filed as required by articles 8299 (7873) and 8300 (7874), Rev.Civil Stats. of Texas,[3] defendants, deriving their title, as they do, through W. E. Howth, Sr., are in law charged with knowledge of the will and its probate, and cannot claim as ·innocent purchasers from his heirs.

Appellees urge upon us that while the recording statutes speak of other instruments and muniments of title than wills, and do not in terms require, for notice, that a will be recorded in the deed records, the probate of a will is a judgment by which the title is recovered, within the statute, article 6638, Rev.Stats. of Texas, requiring "every partition * * * and every judgment or decree by which the title to land is recovered" to be recorded as a prerequisite to their admission in evidence, Haines v. West, 101 Tex. 226, 105 S.W. 1118, 130 Am.St.Rep. 839.

They argue, too, that the Texas decisions have definitely held that foreign wills must be recorded to give notice, Slayton v. Singleton, 72 Tex. 209, 9 S.W. 876; they have also held that to serve notice, proceedings in administration and administrator's deeds must be filed for record, Thompson v. Rust, 32 Tex.Civ.App. 441, 74 S.W.924; and that title held under a domestic will is, in principle, held the same way.

Appellant, answering these contentions, points out: That the statute for the recording of judgments relates to partitions and other judgments in suits between persons; it does not deal with judgments in rem, as probate proceedings are; that there are statutes, articles 8301 to 8303, Rev.Stats. of Texas, limited to foreign wills, placing them on the footing and requiring them to be recorded as deeds are, Slayton v. Singleton, supra; Lane v. Miller & Vidor Lumber Co., Tex.Civ.App., 176 S.W. 100; and that it is definitely settled by the Texas decisions that domestic wills are properly and effectively filed for notice when recorded in the probate records of the county where the will is probated, and though they may be, they do not have to be, recorded as deeds are. Belcher Land Mortgage Co. v. Clark, Tex.Civ.App., 238 S.W. 685; Lynch v. Baxter, 4 Tex. 431, 51 Am.Dec. 735; Glover v. Coit, 36 Tex.Civ.App. 104, 81 S.W. 136; Perdue.v. Perdue, Tex.Civ. App., 208 S.W. 353, 357; Hardin v. Hardin, Tex.Civ.App., 66 S.W.2d 362.

We think that appellant has the right of it on this issue. The will was not a foreign, but a domestic will. It was duly probated in the state of Texas in accordance with the laws of that state. It was duly filed in accordance with those laws. The order admitting it to probate was not a judgment in partition, or one for recovery of title within the statute affecting those matters. Of it and its probate, all the world dealing with the land, especially those dealing with it through the heirs of the testator, were charged with knowledge. All other reasons aside, appellees' claim of innocent purchase fails for this reason.

Upon the limitation issues, appellees strongly urge that they have color of title, and therefore title by limitation against plaintiff, under the three years' statute,

---

[3] Article 8299 (7873). "All original wills, together with the probate thereof, shall be deposited in the office of the clerk of the county court * * * wherein the same shall have been probated, and shall there remain, except during such time as they may be removed to some other court, by proper process, for inspection."

Article 8300 (7874). "Every such will, together with the probate thereof, shall be recorded by the clerk of the county court in a book to be kept for that purpose; and certified copies of such will and the probate of the same, or of the record thereof, may be recorded in other counties, and may be used in evidence as the original might be."

more than three years having elapsed since the death of his father and the termination of the life estate, before the filing of his suit.

We do not think so. Color of title under the Texas three years' statute of limitations is a very different thing from "color of title," as that term is used in other jurisdictions. The statute[4] definitely prescribes what shall constitute color of title. The decisions hold strictly to this prescription, and the facts of this case are definitely not within the statutory description.

2 Texas Jurisprudence, in sections 168, 169, 170, and 171 presents a clear and authoritative picture of the requirements under this statute and the difficulty of complying with it. In section 158 it is said: "Color of title has been defined to be 'that which in appearance is title, but which in reality is no title'; but it is decided that the words are not used in the Texas statute in this sense. Hussey v. Moser, 70 Tex. [42] 44 [7 S.W. 606]. We should not be misled by the phrase 'color of title' as it is used in the construction of the statutes of other States, because it is used in a different sense from that defined in our statute. Schleicher v. Gatlin, 85 Tex. [270] 275 [20 S.W. 120] * * * Color of title differs from title 'only in externals and not in substance.' Grigsby v. May, 84 Tex. [240] 255 [19 S.W. 343]; Burnham v. Hardy Oil Co., 108 Tex. [555] 562 [195 S.W. 1139]."

"Accordingly it is held that heirs are not entitled to assert limitation under color of title, as against one who derives title through a conveyance of their ancestor." 2 Texas Jurisprudence, p. 309; Cagle v. Sabine Valley Timber & Lumber Co., 109 Tex. 178, 202 S.W. 942, 6 A.L.R. 1426; Gould v. West, 32 Tex. 338, 354.

■ Here the effort is to do that very thing. Here persons claiming under the heirs seek to claim three years' limitation under color of title under the heirs of the testator, against the devisee under his will. Under the three years' statute as it has been uniformly construed since its enactment in 1841, this will not do.

The record containing no sufficient proof of payment of taxes to satisfy the five years' statute of limitation, Rev.St. 1925, art. 5509, it remains only to consider defendants' case under the statutes of ten and of twenty-five years. Rev.St.1925, arts. 5510, 5518, 5519. And first, as to the statute of ten years.

■ Appellant, firmly planting himself upon the general proposition that limitation will not run against a remainderman until, the life estate over, the remainderman has come into possession, insists (1) that this proposition is uniform and without exception; (2) that if there is any exception to it, in Texas it is only in cases where the possession is by persons who are entire strangers to the life estate, or, if they are connected with it, they have definitely repudiated that right to possession, to claim in hostility to it, and that repudiation of that claim has been definitely brought home to the remainderman.

Appellees concede the general rule to be as appellant contends for it. They insist that in Texas there is an equally well-settled exception to it, that the estate of the remainderman will be lost by limitation when there is hostile possession taken and maintained under a claim of right to full title adverse to and in repudiation of the right to possession as life tenant. They point out that this is a reasonable rule because, though the remainderman being normally out of possession during the continuance of the life estate, cannot sue in ejectment, or other possessory action, he does have an action to remove cloud from his remainder interest. Lancaster v. Kathleen Oil Co., 241 U. S. 551, 36 S.Ct. 711, 60 L.Ed. 1161; Twist v. Prairie Oil & Gas Co., 274 U.S. 684, 47 S.Ct. 755, 71 L.Ed.

---

4 "Suits to recover real estate, as against a person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action accrued, and not afterward." R.S.1925, art. 5507.

"By 'color of title' is meant a consecutive chain of such transfers down to such person in possession, without being regular, as if one or more of the members orials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant, or land scrip, with a chain of transfer down to him in possession." R.S.1925, art. 5508.

*1297;* Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, 13 Am.St.Rep. 73; Stuart v. Union P. R. Co., 8 Cir., 178 F. 753, 755; 5 R.C.L. 651; 51 C.J. 185; 21 C.J. 967.

They point out, too, that in Texas, where the jurisdiction is blended, a remainderman may bring an action in trespass to try title against those who are in possession, not under, but in hostility to, the life estate. Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865; Clark v. Cattron, 23 Tex.Civ.App. 51, 56 S.W. 99; First American Jurisprudence, 861; Tannille v. Copeland et al., D.C., 288 F. 860.

Here appellant's remainder interest was unquestionably clouded from the start by the deed of his uncles and aunts to his father, the life tenant under the will, followed by his deed purporting to convey the fee simple title and the establishment on the land, under completely adverse possessory claims long maintained, of a village, farms, town lots, homes, and other improvements.

We think it quite plain, then, that appellant has shown no right as against defendants to recover the land sued for. We think the possession in this case was so long continued, so notorious, and so plainly in repudiation of and hostile to the life estate that it set the statutes to running many years ago, and many years ago vested in defendants full title, precluding all claims.

If the possession is viewed merely as adverse possession apart from the paper claim and the long possession of those coming after the original purchasers from Howth is alone considered as adverse, then the possession is by strangers, and fully satisfies the most exacting requirements of the Texas decisions. If the possession is viewed from the standpoint of the paper title under which it was taken, and the fact that defendants deraign title under deeds from Howth is put forward as making them not strangers to, but holding under, the life estate, this is completely overcome by the facts that not only does it appear from the record that Howth never went into possession of the land, or asserted claim to it as life tenant, but he never went into possession of it at all, and those who did possess this land did so under a deed to him from all the heirs and deeds from him laying claim to and conveying not a life estate, but a fee-simple title. The

record overwhelms, indeed, it is admitted that no one connected with the land through the nearly sixty years since Howth conveyed it in fee simple absolute, has made any other claim to it except that of full and fee-simple title absolute, and there has been both a complete abandonment, and a direct and positive repudiation of any claim under, the life estate as such. Under these facts we think that long since defendants by their possession under the ten years' statute of Texas, have acquired full title, precluding all claim. Tillotson v. Hill, Tex.Civ.App., 297 S.W. 603; Crump v. Andress, Tex.Com.App., 278 S.W. 422; Olsen v. Grelle, Tex.Com.App., 228 S.W. 927.

Appellant urges that the facts do not show that he actually knew of the possession of the land in repudiation of and adverse to the life estate and his remainder. The facts testified to and stipulated, establish that he was charged with knowledge of that possession, and of the nature and source of their claim to it, and so charged, limitation has long since run against him. Jones et al. v. Siler, Tex.Com.App., 100 S. W.2d 352; Humphreys v. Edwards, 89 Tex. 512, 36 S.W. 333, 434; Crump v. Andress, supra; Horan v. O'Connell, Tex. Civ.App., 144 S.W. 1048; Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Terry v. Prairie Oil & Gas Co., 5 Cir., 83 F.2d 843.

There are two twenty-five year statutes in Texas; (1) Article 5518 which provides that notwithstanding a person may have been laboring under any of the disabilities mentioned in the article, coverture, minority, insanity, or imprisonment, "one having the right of action for the recovery of any lands, [etc.] against another having peaceable and adverse possession thereof, cultivating, using or enjoying same, shall institute his suit therefor within twenty-five years next after his cause of action shall have accrued and not thereafter."

As applied to this case, this statute adds nothing to appellees' position under the ten years statute. It merely provides that where the possession is for twenty-five years, it is effective as well against those, as against those not, under disabilities.

The other twenty-five year limitation statute is article 5519, which provides: "No person who has a right of action for the recovery of lands, tenements, or hereditaments shall be permitted to maintain

an action therefor against one who holds such lands, tenements and hereditaments by peaceable, adverse claim of right in good faith under a regular chain of title, descending from the State of Texas with all the muniments of such title, duly recorded in the county where the land is situated for a period of twenty-five years prior to the accrual of such cause of action, and one so holding and claiming such lands, tenements and hereditaments under such title shall be held to have a good, marketable title thereto."

This statute by its terms prevents the bringing of an action after twenty-five years of possession, maintained under the conditions the statute requires, and if the record contained proof that the deeds under which appellees claim had been recorded in the deed records as the statute requires, it might well be thought to strengthen appellees' position. Friedman Oil Corporation v. Southern Oil Ref. Co., Tex.Civ.App., 73 S.W.2d 137. For while all the other statutes of limitations require the suit to be instituted within the period named next after the cause of action accrues, and as to them, it might be argued that the cause of action did not accrue until the death of the life tenant, this statute does not so limit the effect of the possession. It prevents any person who has a right of action from maintaining it against one having the peaceable and adverse possession it prescribes, without regard to when the cause of action accrued.

Appellees, however, cannot take comfort from this statute, for neither the facts proven nor the stipulation in the record show the existence of that which is vital under this statute, the requisite continuity in the recording of deeds by the successive occupants, or indeed, that any of the instruments in the chain of title of any of the defendants, was recorded. Owen v. Free, Tex.Civ.App., 85 S.W.2d 1090, 1092.

As above stated, however, we think it clear that the possession of appellees has established title in them precluding all claims under the ten-year statute of limitations and under the twenty-five year stat-

ute, article 5518,[5] and that the judgment was therefore rightly entered, and should be affirmed.

Affirmed.

HOLMES, Circuit Judge (dissenting).

For taking part in the storming of San Antonio de Bexar in 1835, W. E. Howth was given a section of land by a grateful republic. The aged hero died in 1859, leaving a large estate which he fairly disposed of by will;[1] but, feeling a soldier's pride in the Milam grant, he devised this section to his eldest son for life with remainder in fee to the latter's eldest son, together with a succession of substitutionary estates upon failure of male issue in any of them. In so doing, he was well within his rights, as he violated no rule against perpetuities or legal restraints upon alienation. Nevertheless, his valid will is to be defeated, upon the theory that the particular estate was terminated by the conveyance of a greater interest than the life tenant owned, followed by adverse possession of the grantees thereunder for the statutory period.

I concur in the majority opinion, that the devise to appellant under the will created a valid contingent remainder; that appellees were not bona fide purchasers for value from the heirs, because the probate of the will was a proceeding in rem which was notice to all the world; and that they have no color of title which enabled them to hold the fee by adverse possession under the three years statute of limitations; but I dissent from the holding that a remainderman may be deprived of his inheritance by the grantees of a life tenant who shelter themselves under the particular estate while maturing the title in fee by adverse possession against their cestui qui trust.

The appellees are not strangers to the remainderman, but are in privity of estate with him, since they went into possession under deeds from the life tenant, and even here are pleading color of title under them in order to invoke the three years statute of limitations as to the fee. These deeds purported to pass a fee simple interest, but under a Texas statute[2] they conveyed only

---

[5] An interesting brief note discussing these two statutes is to be found in the February number of the Texas Law Review, vol. 14, No. 2, pp. 269, 270, Allen C. Hutcheson, Jr.

[1] Each of his children was devised 800 acres of land in addition to sharing equally in liberal personal bequests.

[2] "All alienations of real estate, made by any person purporting to pass or assure a greater right or estate than such person may lawfully pass or assure, shall operate as alienations of so much of the right and estate in such lands, tenements or hereditaments as such person might lawfully convey; but shall not pass or

a life estate and did not "defeat, impair or in any wise affect such remainder."

These deeds, passing legally only a life interest, and peaceable, uninterrupted possession thereunder for more than twenty-five years, are the sole reliance of appellees' claim to defeat the remainder. I do not say adverse possession, because the life tenant was still living, and, under the facts in evidence, the appellees, who became tenants per autre vie, could not hold adversely to the remainderman.

These deeds were not clouds upon the contingent future interest of appellant, and no court should have cancelled them as such. They were muniments of title which under the statute passed only the interest of the grantor, but they gave appellees the exclusive right to the possession of the property for the life of the grantor. Since an immediate right to possession is necessary to maintain a suit in trespass to try title, since the life tenant has that exclusive right and the remainderman has no right of possession until the death of the life tenant, and since the life tenant is free to convey his interest but can give title to no more than he owns, it follows as the night the day that neither the possession of the life tenant nor of his grantees is adverse to the remainderman. Therefore, the possession was not adverse to appellant until July 31, 1930, the date of the death of the life tenant.[3]

The record in this case being singularly free from any effort by appellees or their predecessors to terminate the life estate, either by surrendering possession to appellant or by notifying him of their adverse claim, the contention is made (1) that the recordation of deeds to the fee gave him constructive notice of an adverse holding, and (2) that possession was not asserted under the life tenancy created by the will, but under deeds from all the heirs conveying not a life estate but a fee simple title.

As to the first proposition, it is well settled that a remainderman takes his title directly from the ancestor and not through the life tenant, and that a deed by a life tenant to a third person is no notice to a remainderman of any adverse claim. Therefore, the deeds from the younger Howth, made between 1878 and 1882, when the remainderman grew from nine to thirteen years of age, gave no notice to the latter of any adverse claim. In the recent case of Rae v. Baker, Tex.Civ.App., 38 S. W.2d 366, the court held that an attempt by the life tenant to convey property and warrant a fee simple title is no notice to the remainderman, because recorded conveyances by the life tenant are not in the chain of title of the remainderman.[4]

The second contention, that possession was not asserted under the life tenancy created by the will, but under deeds from all the heirs conveying a fee simple title, overlooks the fact that those heirs took a contingent substitutionary estate in reversion to this very land, and that their purported deeds in fee simple were effective to pass only so much as they might lawfully convey, and did not operate so as to defeat, impair, or in any wise affect the remainder. Therefore, the appellees, their prede-

---

bar the residue of said right or estate purporting to be conveyed or assured; nor shall the alienation of any particular estate on which any remainder may depend, whether such alienation be by deed or will, nor shall the union of such particular estate with the inheritance by purchase or by descent, so operate as to defeat, impair or in any wise affect such remainder." Section 14, Act Feb. 5, 1840, article 1290, R.C.S.1925. See, also, Kennedy v. Pearson, Tex.Civ.App., 109 S.W. 280; Beaty v. Clymer, 32 Tex.Civ. App. 322, 75 S.W. 540; Bohrer v. Davis, 94 Neb. 367, 143 N.W. 209, L.R.A.1918D, 430 Ann.Cas.1915A, 992; Id., 96 Neb. 474, 148 N.W. 320, L.R.A.1918D, 430.

3 Cook v. Caswell, 81 Tex. 678, 17 S.W.

385; Hensley v. Conway, Tex.Civ.App., 29 S.W.2d 416; State v. Dayton Lumber Co., 106 Tex. 41, 155 S.W. 1178; Adams v. Ramsey, 19 Tex.Civ.App. 294, 46 S.W. 265; 2 Tex.Jur. 117; 14 Am. St.Rep. 628 note; Griffin v. Reynolds, Tex.Civ.App., 107 S.W.2d 634, 636; 28 Tex.Jur. 63.

4 See, also, Runge v. Gilbough, Tex.Civ. App., 87 S.W. 832, affirmed 99 Tex. 539, 91 S.W. 566, 122 Am.St.Rep. 659; Chace v. Gregg, Tex.Civ.App., 31 S.W. 76, affirmed 88 Tex. 552, 32 S.W. 520; Cochran v. Cochran, 43 Tex.Civ.App. 259, 95 S.W. 731; Morse v. Hackensack Savings Bank, 47 N.J.Eq. 279, 20 A. 961, 12 L.R.A. 62.

cessors in title, the younger Howth, the substitutionary reversioners, or so-called heirs (nominated descendants by the testator), all took under the will and were in privity of estate with the remainderman.

A moment's reflection as to the distinct classes of numerous estates carved out of his fee-simple title by the testator will make this plain. After providing for a life estate to the first taker, there was devised to the latter's eldest son a contingent future interest, indestructible by any rule of law defeating intent. Then came a succession of substitutionary estates providing finally, in case of a total failure of male issue, for a sale of the property and a distribution of the proceeds thereof equally among the testator's descendants.

Never was property devised with more care, or more fortified against intestacy, and never was there a devise less liable to lapse for want of a taker. It is a palpable inaccuracy to speak of the heirs conveying a fee simple interest. They were the duly nominated descendants of the testator attempting to convey more than they owned, but in law effecting a transfer of only their substitutionary equitable reversion. There was no merger, because all of the estates were created by the same instrument, and a merger would defeat the will of the testator; there was no impairment of the remainder, because forbidden by the Texas statute; and there was no adverse possession, because of the trust relation between the parties.

The general rule seems to be that there is no legal way in which a life tenant can diminish the remainder; that he is a trustee or quasi-trustee, whose absolute possession cannot be adverse to that of the remainderman; that he cannot compel the remainderman to treat a life estate as terminated; and that the latter may waive his right to enforce a forfeiture and is entitled to a new right of entry upon the death of the life tenant. The latter may be enjoined from committing waste, but not from making valuable improvements. In some cases, a life estate may be terminated by a surrender which consists in yielding possession to the immediate reversioner or remainderman, but when, as here, there is a contingent remainder, it being uncertain until the happening of the contingency who will be entitled thereto, there can be no acceleration by premature determination of the particular estate.[5] The appellant might have died before his father, in which event the remainder would have vested in another contingent taker.

Most of what has been said as to the law is elementary, and doubtless will not be denied; but I come now to the argument of the holding which evokes this dissent. It is said that there is a well-recognized exception in the law of Texas less favorable to remainders than the general principles applicable to possessory estates and future interests; that in Texas the jurisdiction is blended, and the remainderman may bring an action in trespass to try title against those who are in possession, not under but in hostility to the life estate.

There is nothing exceptional in the procedure which permits one who has the right to possession to bring an action against those who are in hostile possession of his property; but if it is meant to say that in an action of trespass to try title in Texas one may pray for a cancellation of a cloud upon his title, I submit that the point deals with remedies and not with rights. We are concerned here solely with rights and not with remedies. A remedy without a right is the shadow of justice, too insubstantial to defeat future interests. With no right to possession until the life tenant died, no right to cancel the muniments of appellees' title, and no notice of the existence of either, appellant was remediless even in a blended jurisdiction of law and equity. He was guilty of no laches, as the owner of a contingent future interest, because he was not required to stand guard over the land or the records

5 Young v. Harris, 176 N.C. 631, 97 S.E. 609, 5 A.L.R. 477; American Nat. Bank v. Chapin, 130 Va. 1, 107 S.E. 636, 17 A.L.R. 304; Swann v. Austell, 5 Cir., 261 F. 465, certiorari denied 252 U.S. 579, 40 S.Ct. 344, 64 L.Ed. 726; Foreman Trust & Savings Bank v. Seelenfreund, 329 Ill. 546, 161 N.E. 88, 62 A. L.R. 201.

during the life tenancy. Without notice of a hostile claim being brought home to him, he only needed to await the inevitable death of the life tenant; and he had the right to presume that the grantees of the life tenant were holding in trust for him, claiming under the Texas statute no greater estate than their grantor owned. It has been held, in Texas, that where a tenant for life under a will claims the title in fee, the remainderman may maintain a suit to construe the will and fix the status of the title (remove the cloud, if you please); but that such an action, if successful, would give no present right of possession. It holds further that one does not forfeit his life estate by asserting title to the fee adversely to those entitled to the remainder under the terms of a will creating both estates.[6]

It is further said that appellees concede the general rule to be as appellant contends, but insist that in Texas there is an equally well-settled exception to the effect that the estate of the remainderman will be lost by limitation when there is hostile possession, taken and maintained under a claim of right to full title, adverse to and in repudiation of the right to possession as life tenants.

Aside from the fact that there is no evidence in this record of such hostile possession and repudiation, other than the acceptance of, and going into possession under, fee-simple deeds from a life tenant who had acquired also the equitable title in reversion of his brothers and sisters, descendants of the testator—this argument wholly overlooks the fact that, under the Texas statute, these deeds conveyed no greater interest than the life tenant and contingent equitable reversioners owned; and that there can be no acceleration of a remainder by reason of forfeiture or otherwise without the consent of the remainderman, who, in any event, has a new right of entry upon the death of the life tenant. The accumulation from the life tenant and reversioners of deeds limited in their legal effect by statute and maintaining possession thereunder per autre vie does not amount to repudiation of the life estate. We have seen that these deeds are not even color of title, under the laws of Texas, for more than a life interest, and that they are muniments of title for that interest.

Cases of cotenants are cited. They are easily distinguished. Cotenants have unity of possession or the right to possession, and when one cotenant ousts another, an action immediately accrues. A life tenant cannot oust the contingent remainderman, because the latter has no possessory interest. He is not in and cannot be put out of possession.

Even the alleged exception to the rule requires notice of the adverse possession to be brought home to the remainderman. There is no evidence in this case to show the slightest notice to appellant, a resident of New Jersey, approximately two thousand miles from the land. The opinion says he was charged with such notice, but we have seen that there was no constructive notice, since the appellant took directly from the testator and not from the life tenant.

In Barrett v. Crump, Tex.Civ.App., 15 S.W.2d 672, cited contra in the opinion, the parties made an oral division of real property, followed by thirty years' adverse possession. The widow surrendered to children two-thirds of deceased husband's real estate, and accepted one-third as her entire interest, thereafter claiming it as her own. The court held that the claim was inconsistent with that of homestead and life estates, and specific declaration of abandonment or renouncement of such limited claims was not necessary.

In Horan v. O'Connell, Tex.Civ.App., 144 S.W. 1048, also cited contra, a deed by the life tenant, followed by ten years' adverse possession, was upheld because she was the surviving spouse with the right to sell the community estate to pay debts. The court held that a deed by heirs to their mother, upon the death of their father, conveying a life estate to avoid court procedure and to prevent a partition during her lifetime, did not prevent her from selling community property to pay community debts. What was said by the court, on a motion for rehearing, about repudiation of the life estate, was plainly limited to the particular facts of the case wherein the surviving spouse was exercising a right superior to the life estate.

In Crump v. Andress, Tex.Com.App., 278 S.W. 422, also cited contra, the widow began possession under a homestead claim, bought an independent title with her own

[6] Clark v. Cattron, 23 Tex.Civ.App. 51, 56 S.W. 99, writ of error denied.

664

money, and expressly notified her three children of her hostile claim solely under it. It was not controverted that, so long as a double claim existed, no adverse possession could be had by the widow. In the case at bar, the best that can be said for appellees is that they were holding under deeds from the life tenant conveying the fee.

In Tillotson v. Hill, Tex.Civ.App., 297 S.W. 603, also cited contra, the court said it was shown by indisputable evidence that J. W. Hill had known of the adverse claim for more than twenty years. In Humphreys v. Edwards, 89 Tex. 512, 36 S.W. 434, cited contra, the court affirmed a judgment of the Court of Civil Appeals, 89 Tex. 512, 36 S.W. 333, and referred to the latter's opinion approving an instruction to the jury that knowledge must be brought home to plaintiffs that the widow claimed the entire title. The rest of what the court said on this subject was dictum, but even it implies that there must be constructive notice to the remainderman. In Luker v. Anderson, Tex.Civ.App., 10 S.W.2d 149, 150, cited contra, the court said: "The contention of appellants that appellees' cause of action was barred by the statute of limitation must be overruled. The injury from a cloud on title is continuing, and the cause of action for its removal is likewise continuing and never barred while the cloud exists. Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601." It is proper to add that title to land cannot be lost merely from a cloud on it.

I have previously distinguished the co-tenancy cases cited in the majority opinion. They are: Terry v. Prairie Oil & Gas Co., 5 Cir., 83 F.2d 843; Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Jones v. Siler, Tex.Com.App., 100 S.W.2d 352. There seems to be nothing to defeat the remainder in these or other Texas cases that have come to my attention. Even under the most favorable interpretation of these decisions in behalf of appellees, the vested interest of a contingent remainderman who stands ready to take possession upon the termination of the life estate cannot be lost by the adverse possession of a tenant per autre vie without actual or constructive notice of such adverse holding being brought home to the remainderman. Therefore, I think the judgment should be reversed.